IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROMINENT CONSULTING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALLEN BROTHERS, INC.,<br><br>Defendant. | No. |

**AFFIDAVIT OF LAURA SEIDENSTICKER**

I, Laura Seidensticker, being first duly sworn on oath, depose and state that if called to testify as a witness in this matter, I could competently testify to the following facts, of which I have personal knowledge:

1. I am a resident of Glenview, Illinois, and am over 18 years of age.

2. I have been an owner of Prominent Consulting, LLC ("Prominent") and its predecessors and affiliated companies since 1996, and currently serve as its Vice President and Web Systems Director.

3. I have developed software code for 18 years, and for the past 13 years have in particular developed web based and enterprise systems. In 1989, I graduated from Iowa State University with a degree in Aerospace Engineering and studied Computational Fluid Dynamics at the graduate level. Upon graduating from Iowa State, I worked for N.A.S.A's Missions Operation Directorate designing space shuttle missions and overseeing flight simulator software development. I have also provided software development consulting services to Navistar, Motorola, and The Northern Trust Company.



4. From 1998 to 2004, I served as The Northern Trust Company's lead web architect for Java 2 Enterprise Edition (J2EE) systems and served on the enterprise architecture team, both as a consultant through Prominent and as an employee of Northern Trust.

5. In June 2004, I left The Northern Trust Company to begin software development of the Allen Brothers, Inc. ("Allen Brothers") website for Prominent. Allen Brothers is a Chicago-based company specializing in the sale of meats and other foods to individual retail customers through its printed catalog and by way of the Internet. The design and development was a joint effort by Kurt Seidensticker and me.

6. On January 11, 2005, prior to the launch of Allen Brothers' new website, Prominent and Allen Brothers entered into a Web Site Development and License Agreement ("Development Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

7. We designed and developed the Allen Brothers' website from June 2004 to February 2005. I worked almost exclusively on the website during this time. The website was launched on February 17, 2005. My work was identified in Internet Retailer magazine as being one of the Top 50 innovators for 2006.

8. Kurt and I created the Allen Brothers' website utilizing J2EE technology. The website consisted of web pages containing HTML source code, JavaScript source code, CSS, static text and images. The HTML source code was created with JavaServer Pages (JSP) technology, which is a key component of J2EE. In its basic form, a JSP page is simply an HTML web page that contains additional bits of code that execute application logic on the web server to generate dynamic website content.

9. This application logic involved other J2EE technologies such as JavaBeans, Java Database Connectivity (JDBC) objects, or Enterprise Java Beans (EJB), all of which are easily accessed from within a JSP page using bits of code. For example, a JSP page may contain

HTML code that displays static text and graphics, as well as code to access JDBC objects that access additional information within a database; when the page is displayed in a user's browser, it will contain both the static HTML source code and dynamic information retrieved from the database or specified by the JSP application logic. The JSP code is not visible to the end user as the JSP source code is compiled on the server and only the resulting HTML, CSS, JavaScript, static text and images are sent to the user's browser.

10. I continued to make software source code modifications to the website and related applications between February 17, 2005 and October 1, 2007, although the original source code developed as stated above continued in use on the Allen Brothers' website at all relevant times.

11. For a period of more than a year, Allen Brothers made it known to Prominent that it wanted to restructure the Development Agreement, since Allen Brothers believed that Prominent was earning too much money pursuant to the existing commission structure and its exponentially increasing internet sales. Prominent, however, repeatedly refused to restructure the Agreement. Then, in August 2007, Allen Brothers stopped providing Prominent with new content for the website and stopped paying Prominent monies owed under the Development Agreement.

12. During the period of time it was providing technology consulting and other web-related services for Allen Brothers, Prominent had a system that monitored the Allen Brothers' website Prominent had developed, and this system monitored specific pages of the website. This system would send alerts to Prominent's staff if there were any issues with the website.

13. At about 4:00 a.m. CDT on September 29, 2007, I was notified by alerts from the monitoring system that the website had issues. I investigated and determined that the DNS host record for www.allenbrothers.com had changed and was no longer pointing at the website that Prominent had developed, and that the host record was now pointing at a new website. This meant that the www.allenbrothers.com website was no longer utilizing what Prominent had

developed and was now directing internet users to a new website created by Allen Brothers at another hosting facility.

14. I examined Allen Brothers' new website and saw many similarities in the look-and-feel of the new Allen Brothers' website as compared to the website that Prominent had developed for Allen Brothers. The new website was being hosted at Yahoo! Stores, but the pages had been customized from the standard Yahoo! Stores pages, to pages that looked like those developed by Prominent.

15. I was able to view the HTML source code of the pages of the new Allen Brothers' website in a web browser, by selecting the web browser's menu option "View" and "Source". I was able to save the source code for all pages of the new website. In addition, I used a tool called HttpTrack to download all pages from the Allen Brothers' new website.

**Shipping Calendar Infringement**

16. During September and October 2005, Prominent, by and through me and Kurt Seidensticker, had developed a specialized Shipping Calendar for the Allen Brothers' website. It was written in JavaScript, HTML, CSS and JSP, and was unlike any other calendar used by any e-commerce website on the Internet. It provided real-time updates as to the available delivery dates and costs associated with the contents of the customer's shopping cart and allowed customers to specifically select delivery dates for products ordered.

17. Because the Allen Brothers' products are perishable food items, the date of delivery is a valuable factor to both the customer and to Allen Brothers. A customer to the website before the implementation of the Prominent Shipping Calendar selected two day, overnight, or Saturday delivery, but because of unique business rules of Allen Brothers and of FedEx, customers did not know when they would receive their shipment. In addition, some non-frozen products have restrictions on when they can be shipped.

18. For example, the products cannot be shipped on Friday, unless Saturday delivery is specified and the order is placed before 10:30 AM. After 10:30 AM on a Friday, because shipments contain dry ice to maintain the products freshness for two days, two day shipments cannot be made over the weekend and cannot be shipped until Monday and thus a customer would not receive their shipment until Wednesday. This added confusion to the ordering process for the customer as well as support issues for Allen Brothers. Allen Brothers would have to explain to customers why they did not receive their order on Tuesday as they thought they would. Also, different products have different restrictions. Allen Brothers sells Never Frozen items, which can only be shipped via overnight delivery.

19. Moreover, until July 26, 2006, Allen Brothers was selling products from the Honolulu Fish Company, which also had to be shipped via overnight delivery from Hawaii. The Shipping Calendar created and developed by Prominent was able to determine which items were in the user's shopping cart and then display the available delivery options and shipping costs in the shipping calendar based on unique rules.

20. The calendar allows the user to page through each month, and displays with color-coded days, the type and cost of shipping available for delivery on each day, and the calendar considered Allen Brothers' and FedEx's unique business requirements as well as the content of the shopping cart.

21. After viewing the new Allen Brothers' website shipping and billing page, I noticed immediately that the new website had the same functionality for its shipping calendar as the Prominent Shipping Calendar.

22. I then was able to look at the source code for this page in the browser by selecting in the menu the option "View" and "Source". I performed a line-by-line comparison of Allen Brothers' HTML and JavaScript Source code and identified significantly identical lines of code

from Prominent's Shipping Calendar JavaScript code within Allen Brothers' new website shipping calendar JavaScript code.

23. Beyond the majority of copied lines of code, Allen Brothers had made some minor changes such as changing some variable names and rearranging some lines of code.

24. There are also several lines of code within the new Allen Brothers' shipping calendar code that are exactly as within the Prominent Shipping Calendar code, however, the code is irrelevant and obsolete when used outside of Prominent's Shipping Calendar. For example, there are references to a variable called "hawaiianFish", which refers to the Honolulu Fish Company products, which have not been sold by Allen Brothers since July 26, 2006, yet are contained within the source code for Allen Brothers shipping calendar code.

25. In addition, there is a comment in the Allen Brothers' shipping calendar JavaScript code that states "this is legacy code, partially refactored." This means that the programmer was attempting to re-engineer code that was obtained from Prominent's Shipping Calendar JavaScript code.

**Other Source Code Infringement**

26. I also reviewed the other pages in this new Allen Brothers' website. A majority of the pages contain code from the website Prominent created. There are many "fingerprints" that can be shown to exist in the new website code that shows that the code was copied from Prominent's intellectual property.

**Cascading Style Sheets**

27. For example, web sites can have Cascading Style Sheets (CSS) that define the look-and-feel of the website. Almost every page in the new Allen Brothers' website contains CSS selector tags that were unique in name and used exclusively in the Prominent website style sheets. However, Allen Brothers' new website does not have style sheets that define these

selector tags, and so therefore are not functional within the Allen Brothers' website, but further indicates that the HTML source code was copied from Prominent.

**Links Characteristic of Prominent's Implementation**

28. Several pages on the new website contain links to pages which are only functional in the Prominent website, and are not functional in the new Allen Brothers' website. These remnant links are formatted to utilize JSP technology which is the technology used by Prominent's implementation and not by Allen Brothers' implementation, and thus do not function. In addition, some of these links contain embedded URL parameters which are solely unique to Prominent's implementation and tracking.

**Use of steaks.gif and tanpixel.gif**

29. Prominent created the look-and-feel of the Allen Brothers' website through the use of CSS, HTML Source Code, and unique images. One method that Prominent used to layout pages was to use 1x1 pixel images, which had unique names to Prominent's implementation, steaks.gif and tanpixel.gif. The new Allen Brothers' website contains many pages that refer to these images, and they are used in the same way and manner as in the Prominent website. The way these images were used within the HTML source code is proprietary to Prominent.

**Unique identifiers**

30. Many of the pages use unique identifiers or numbering that was proprietary to the Prominent e-commerce website. For example, the Gift Order Information page has a link containing a URL parameter of "category=57", a category identifier unique to the Prominent website.

31. This category identifier refers to Prominent's unique numbering system for the product categories displayed on Prominent's e-commerce website. Prominent's website used this numbering in the link in order for the JSP application logic to dynamically display unique

product categories. The new Allen Brothers' website does not have this capability. In addition, there is no reason that the new Allen Brothers' website would have the same numbering scheme for categories.

32. There are also many pages in the new Allen Brothers' website with the same "name" and "id" values for image attributes as in the Prominent IP, like "Image451". There is no probability that the images would have the same naming convention unless the code was copied from the Prominent intellectual property.

33. The Allen Brothers implementation of the "Contact Us" web page uses marketing tracking codes within their HTML source code which are unique to Prominent's e-commerce website implementation. More specifically, this HTML source code contains a "MarketingSources" tracking code ID which is used to internally track marketing results within Prominent's e-commerce system and has no relevance within the Allen Brothers' implementation.

**Source Code**

34. I have performed a complete page-by-page comparison of the Allen Brothers' website to Prominent's original implementation in February 2005 as well as to the August 2007 revision, and I determined that the HTML source code used by Allen Brothers was substantially copied for all product pages (over 286 pages).

35. I also determined that 35 of 37 HTML source code pages for non-product pages were copied as well.

36. The HTML source code that Allen Brothers copied was the same HTML source code created by Prominent's JSP technology implementation as described earlier.

**Look and Feel**

37. The new Allen Brothers website achieved an almost identical look and feel to Prominent's e-commerce website through the copying of HTML source code, CSS, JavaScript source code, text and images from Prominent's website.

**Supporting Comparison**

38. Attached hereto as Exhibit B is a side-by-side comparison referencing source code from the Prominent's e-commerce website and the source code used by the new Allen Brothers' website.

**Access by Allen Brothers Personnel**

39. I reviewed access logs of the Prominent e-commerce system and determined that Jan Baiden, Allen Brothers Vice President of Marketing, had accessed the ordering section of the website on February 10, 2007; March 15, 2007; May 18, 2007; June 1, 2007; and September 22, 2007. Allen Brothers would have had to access the ordering section of the website to access the shipping calendar and related code.

40. In sum, after reviewing the HTML and JavaScript source code which is proprietary to Prominent, I have determined that Allen Brothers is using many copies and slightly modified copies of pages created and owned by Prominent, as well as several pages which contain remnants of Prominent code which indicates reverse engineering of Prominent's intellectual property.

**Copyright Applications**

41. On or about October 18, 2007, Prominent filed a copyright application with the United States Copyright Office in relation to the Shipping Calendar as described herein. A true and correct copy of this application is attached hereto as Exhibit C.

42. On November 8, 2007, Prominent filed a copyright application with the United States Copyright Office in relation to the source code originally developed by Prominent for the creation and maintenance of the Allen Brothers' website as described herein. A true and correct copy of this application is attached hereto as Exhibit D.

Laura Seidensticker

Subscribed and sworn to before
me this 8th day of November 2007

Notary Public

"OFFICIAL SEAL"
Elizabeth Stephens
Notary Public, State of Illinois
Cook County
My Commission Expires October 23, 2010