**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PROMINENT CONSULTING, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6357 |
| | ) | |
| **ALLEN BROTHERS, INC.,** | ) | Judge Ruben Castillo |
| | ) | |
| Defendant. | ) | Magistrate Judge Morton Denlow |

**ALLEN BROTHERS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Introduction .................................................................................................................... 1

Background .................................................................................................................... 4

    A. Allen Brothers' Relationship with Prominent ...................................................... 4

    B. Allen Brothers' Discovery of Prominent's Perfidy ............................................ 4

    C. Far From Intentionally Stealing Prominent's Code, Allen Brothers Hired Industry Leading Vendors to Develop Its New Website ............................................................. 6

Argument ...................................................................................................................... 7

I.    Legal Standard .................................................................................................... 7

II.   Prominent Has Not Demonstrated That It Is Likely To Succeed On The Merits Of Its Claim .................................................................................................................... 9

    A.   Prominent's Massively Unclean Hands Warrant Denial of Equitable Relief. .................... 9

    B.   Prominent's Applied-For Copyrights are of Questionable Validity. ............... 10

    C.   Allen Brothers' Owns the Rights in the Look-And-Feel of the Website. ......................... 10

III.  Prominent Cannot Establish Either Irreparable Injury or Lack of an Adequate Legal Remedy ............................................................................................................. 11

    A. Irreparable Harm Should Not Be Presumed and Prominent Has Failed to Establish Any ....................................................................................................................... 11

    B.   Damages are an Adequate Remedy for any Alleged Wrong. ........................... 13

IV.  The Harm That Will Result To Allen Brothers From Interference With Its Website During Its Busiest Season Justifies Denial of the Motion ................................................ 14

V.   Prominent's Request For Injunctive Relief Is Moot As The Infringing Content Alleged By Prominent Does Not Exist On The Current Allen Brothers Website ................................. 16

VI.  Prominent's Actions Do Not Demonstrate Any Exigency Or Why Immediate Equitable Relief Is Necessary ..................................................................................................... 17

VII. In the Unlikely Event that this Court Grants an Injunction, It Should Require Prominent to Post a $9 Million Bond ................................................................................................ 18

VIII.Conclusion ............................................................................................................ 19

## TABLE OF AUTHORITIES

Federal Cases

*Adams v. Attorney Registration and Disciplinary Comm'n,* 801 F.2d 968, 971 (7th Cir. 1986).. 11

*Allora, LLC  v. Brownstone, Inc.*No. 01-cv-87, 2007 WL 1246448 at *5 (W.D.N.C.  April 27, 2007) ....................................................................................................................................... 15

*American Hosp. Supply Co. v. Hospital Products Ltd.,* 780 F.2d 589, 607 (7th Cir. 1985)......... 11

*Capital Records, Inc. v. Mattingley,*  461 F.Supp.2d 846, 850 (S.D. Ill. 2006) .......................... 13

*Caterpillar, Inc. v. Walt Disney Co.,* 287 F. Supp.2d 913, 923 (N.D. Ill. 2003)......................... 19

*Chamberlain Group, Inc. v. Lear Corp.,* No. 05 C 3449, 2007 WL 1017751, *2 (N.D. Ill. March 30, 2007) .............................................................................................................................. 11

*Coyne-Delany Co. v. Capital Dev. Bd.,* 717 F.2d 385 (7th Cir. 1983) ........................................ 22

*Dow Jones & Co., Inc. v. Board of Trade of City of Chicago,* 546 F. Supp. 113, 122 (D.C.N.Y 1982) ....................................................................................................................................... 17

*Drummond American Corp. v. Murphy,* No. 87 C 5642, 1987 WL 16244, *5 (N.D. Ill. Aug. 26, 1987) ....................................................................................................................................... 21

*Ebay Inc. v. Mercexchange, L.L.C.,* 126 S.Ct. 1837, 1840 (2006) ............................................... 14

*Eveready Battery Co., Inc. v. Adolph Coors Co.* 765 F.Supp. 440, 444 (N.D. Ill. 1991)............ 11

*Frederick Atkins, Inc. v. Carson Pirie Scott & Co., Inc.,* No. 99 C 7838, 1999 WL 1249342, *1 (N.D. Ill. Dec. 13, 1999) .......................................................................................................... 18

*Geneva Assur. Syndicate, Inc. v. Medical Emergency Services Associates (MESA) S.C.,* 1992 WL 92034, *12 (N.D. Ill. 1992).................................................................................................... 22

*George S. May Intern. Co. v. Hostetler,*  No. 04 C 1606, 2004 WL 1197395, *2 (N.D. Ill. May 28, 2004) .................................................................................................................................. 14

*Great Western Cities, Inc. v. Binstein,* 476 F.Supp.827, 832 (N.D. Ill. 1979) ...................... 12, 13

*Innovative Clinical Solutions, Ltd. v. Clinical Research Center,* 173 F. Supp. 2d 826, 834 (C.D. Ill. 2001)................................................................................................................................... 13

*IXL Inc., v. AdOutlet.Com, Inc.,* 2001 WL 315219, *8 (N.D. Ill. 2001) ............................... 12, 16

*Martin v. Wal-Mart Stores, Inc.,* No. 07 C 3458, 2007 WL 3231414, *3 (N.D. Ill. Oct. 26, 2007) ................................................................................................................................................ 17

*Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) ...................................................................... 11

*M-F-G Corp. v. EMRA Corp.,* 817 F.2d 410, 411(7th ................................................................. 20

*New Era Publications Int'l v. Henry Holt & Co., Inc.,* 684 F. Supp. 808, 809 (S.D.N.Y. 1988) . 21

*Pickett v. Prince,* 207 F.3d 402, 404 (7th Cir. 2000) ................................................................... 14

*Reinders Brothers, Inc. v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 54 (7th Cir. 1980) ....... 21

*Roland Machinery Co. v. Dresser Indus.,* 749 F.2d 380, 392 (7th Cir. 1984) ............................. 11

*Shondel v. McDermott,* 775 F.2d 859, 868 (7th Cir., 1985) ......................................................... 13

*Signode Corp. v. Weld-Loc Systems, Inc.,* 700 F.2d 1108, 1111 (7th Cir. 1983) ........................ 12

*Ty, Inc. v. Publications Intern. Ltd.,* 292 F.3d 512, 516 (7th Cir. 2002) ..................................... 21

*Ty, Inc. v. West Highland Publishing, Inc.,* No. 98 C 4091, 1998 WL 698922, *19-20 (N.D. Ill. Oct. 5, 1998) ............................................................................................................................. 16

*Windgate Software, LLC v. Minnesota Computers, Inc.,* 504 F. Supp. 2d 582, 587 (D. Minn. 2007) ......................................................................................................................................... 17

## Federal Statutes

17 U.S.C. § 411(a) ....................................................................................................................... 14

17 U.S.C. § 501(a) ....................................................................................................................... 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PROMINENT CONSULTING, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6357 |
| | ) | |
| **ALLEN BROTHERS, INC.,** | ) | Judge Ruben Castillo |
| | ) | |
| Defendant. | ) | Magistrate Judge Morton Denlow |

**ALLEN BROTHERS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant Allen Brothers, Inc. ("Allen Brothers"), by its attorneys, hereby respectfully requests that this Court deny the Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO Motion") filed by Plaintiff Prominent Consulting, LLC ("Prominent"). For all of the reasons set forth herein and in the accompanying papers, including the Verified Answer and affidavits submitted herewith, the TRO Motion should be denied.

**Introduction**

While Prominent attempts to portray this case as a simple and straightforward case of intentional copyright infringement, and attempts to portray itself as an innocent victim, the facts underlying this case - including the tremendous number of relevant facts omitted by Prominent - establish a vastly different truth. Prominent has not brought the TRO Motion because of concern that its alleged intellectual property rights are being infringed or because Prominent faces any irreparable harm. On the contrary, Prominent's intent and desire is simply to further injure and harass Allen Brothers and to seek to gain leverage to deter Allen Brothers from holding Prominent and its owner and CEO, Kurt Seidensticker ("Seidensticker"), responsible for the

1

intentional wrongdoing and egregious misconduct they committed and that are the subject of a pending lawsuit between the parties in state court. Allen Brothers' claims in that state court suit arise from Prominent's and Seidensticker's improper and unethical monitoring of Allen Brothers' email traffic in a perversion of their role as Allen Brothers' network administrator and Prominent's and Seidensticker's perfidy in subsequently transmitting highly confidential Allen Brothers' information gleaned from those emails (including legal advice provided to Allen Brothers both in the emails themselves and in confidential legal memoranda attached to the emails that Seidensticker opened and read) to a former Allen Brothers Vice President that Allen Brothers had sued. The same malevolence that lies behind that reprehensible conduct explains Prominent's attempt to obtain an injunction to interfere with Allen Brothers' website during this fourth quarter holiday season (a business period as important to Allen Brothers as Valentine's Day is to a florist). While the prior misconduct by Prominent and Seidensticker represented clandestine attempts to harm Allen Brothers, the TRO motion is a brazen and open attempt by Prominent to cause Allen Brothers additional harm.

Neither the facts nor the law here allow the temporary injunctive relief that Prominent is seeking. Allen Brothers has submitted herewith the Affidavit of its President, Todd Hatoff ("Hatoff"), establishing both the underlying facts that demonstrate the unfathomable extent of Prominent's unclean hands as well as the massive irreparable harm that will result to Allen Brothers from any interference with its website during this holiday season.[1]  (*See* Exhibit A hereto.)  Hatoff's affidavit also establishes that, when Allen Brothers discovered the betrayal represented by Prominent's misconduct and was forced to obtain a new website, far from

---

[1] In fact, the timing of the TRO Motion, which was filed almost seven weeks after Prominent learned of the alleged copying about which it complains, and noticed for presentment three days before the generally acknowledged busiest shopping day of the year and the kickoff of the holiday shopping season,  is consistent with a plan to seek this relief at precisely the time it would cause the most harm to Allen Brothers.

intentionally copying any intellectual property belonging to Prominent, Allen Brothers retained *independent professionals* to develop that website. Also submitted herewith are affidavits from those independent professionals who developed Allen Brothers' current website. (*See* Exhibits B and C.) Those affidavits demonstrate that the source code running the current version of Allen Brothers' website is not the code referred to in Prominent's papers in this matter and that virtually none of the specific examples of claimed copying set forth in Prominent's papers exist in the source code running Allen Brothers' website. The TRO Motion also must be denied because Prominent cannot satisfy the legal standards for the issuance of an injunction. For example, Prominent has failed to demonstrate any irreparable harm or to explain how it lacks an adequate remedy at law in the event that some infringement is found, particularly given that there is an arm's length contract between the parties that expressly assigns a monetary value to Allen Brothers' use of the Prominent website.

This Court should deny Prominent's TRO Motion for at least the following reasons: (1) Prominent cannot demonstrate that it is likely to succeed on the merits of its claims, in large part because of its own blatantly unclean hands and bad faith but also because of the questionable validity of the copyrights in question, which Allen Brothers intends to oppose, and contractual provisions granting to Allen Brothers the look-and-feel of the website developed by Prominent; (2) Prominent cannot establish either irreparable injury or the lack of an adequate legal remedy in that if this Court finds that there was infringement, monetary damages will be a sufficient remedy; (3) the irreparable harm an injunction will cause Allen Brothers vastly outweighs any alleged harm caused to Prominent from denying the injunction; (4) the TRO Motion is moot because none of the allegedly "copied" source code is found anywhere on Allen Brothers current

website, if it ever was found there at all; and (5) Prominent has not demonstrated any emergency warranting the drastic remedy of immediate equitable relief.

## Background

### A. Allen Brothers' Relationship with Prominent

Allen Brothers is a leading purveyor of fine meats and other fine foods to individual retail consumers through Allen Brothers' Internet website and printed catalog as well as to many of the nation's finest steakhouses, restaurants, hotels and country clubs. (**Exhibit A**[2], Affidavit of Todd Hatoff at ¶ 3). On or about January 11, 2005, Allen Brothers and Prominent entered into a Web Development and License Agreement (the "Development Agreement"), pursuant to which Prominent was to develop a website for Allen Brothers as well as perform a wide variety of technology functions and e-commerce marketing for Allen Brothers. (*See* Plaintiff's TRO Motion, Ex. 1(A), Development Agreement and Ex. 1 thereto).

Before Allen Brothers learned of Prominent's betrayal and breach, Seidensticker and Hatoff shared a long-standing and close personal friendship. (Ex. A. at ¶ 10). In addition, Allen Brothers and Prominent had a very close business relationship, which had evolved to the point that Prominent had become Allen Brothers' de facto information technology department. (*Id*.) One of the roles served by Prominent was acting as Allen Brothers' email network administrator in conjunction with Prominent's services under the Development Agreement. (*Id*.).

### B. Allen Brothers' Discovery of Prominent's Perfidy

In April of 2007, Allen Brothers brought an action in Illinois state court, *Allen Brothers, Inc. v. Marland, et al.*, No. 07 CH 11877 (Cook County Cir. Ct.) (the "State Court Case"), against Scott Marland, a Vice President of Allen Brothers who resigned suddenly and

---

[2] Because of their voluminous size, the Exhibits are contained in a separately bound volume submitted herewith and incorporated herein.

unexpectedly. (*Id.* at ¶ 7) Allen Brothers' claims against Marland in the State Court Case are based on clear evidence showing that Marland had viewed, printed and potentially copied onto disks highly valuable Allen Brothers' confidential business information on the day immediately preceding his unexpected resignation. (*Id.*) Pursuant to an order of court in the State Court Case, Allen Brothers was able to examine Marland's home computers for Allen Brothers information. (*Id.* at ¶ 8) When Marland's computers were reviewed, Allen Brothers discovered an email from an anonymous Google email ("gmail") account that was sent to Marland and his wife, Debbie Marland, ten days *before* the State Court Case was filed warning Marland that Allen Brothers intended to take legal action against him and urging him to destroy records and correspondence related to Allen Brothers and to Marland's wrongdoing. (*Id.*)

As detailed in the Second Amended Complaint, incontrovertible documentary evidence establishes that Seidensticker sent the email at issue to Marland and his wife. (*Id.* at ¶ 9) (*See also* Ex. A, at Ex. 1. at ¶¶ 78 - 82). Because Prominent acted as Allen Brothers' email administrator in conjunction with Prominent's services under the Development Agreement, Seidensticker had access to Allen Brothers' emails. (*See* Ex. A at ¶ 10) While that access was intended solely to enable him to perform his functions as network administrator, Seidensticker instead used Prominent's access to spy on Allen Brothers, to pass highly confidential information to a soon-to-be litigant against Allen Brothers, and to encourage and instruct that soon-to-be litigant how to spoliate evidence by deleting and destroying computer files which, if not spoliated, would have been discoverable evidence in the lawsuit. (*Id.* at ¶ 8)

In fact, following the first email Seidensticker sent, he exchanged at least nine (9) other emails with Debbie Marland over the course of twenty-one (21) days (collectively, the "Betrayal Emails"). (*Id.* at ¶ 8) In those Betrayal Emails, Prominent and Seidensticker disclosed Allen

5

Brothers' confidential information of the greatest sensitivity, including detailed information regarding Allen Brothers' legal strategy in its complaint against Marland, the existence and contents of private investigator reports and specific legal advice provided to Allen Brothers by its attorneys. (*Id*.)  Seidensticker's emails also contained a series of increasingly blatant and bizarre lies, such as his claim to Debbie Marland that he obtained Allen Brothers' privileged and highly confidential information through his role with the "FBI Organized Crime division" and that he was "working with Interpol on money laundering." (*Id*.)[3]

The contents of Seidensticker's emails led Allen Brothers to amend its complaint in the State Court Case on September 17, 2007 to include claims against both Prominent and Seidensticker. (*Id.* at ¶ 9).  On November 13, 2007, Allen Brothers filed a Second Amended Complaint adding claims related to Seidensticker's and Prominent's theft of funds from an Allen Brothers budget they controlled.   Rather than using that budget for optimization services to benefit Allen Brothers, Seidensticker and Prominent misused the budget to benefit another of Seidensticker's companies.  *See* Ex. 1 to Ex. A, ¶¶ 86-89.

### C.  Far From Intentionally Stealing Prominent's Code, Allen Brothers Hired Industry Leading Vendors to Develop Its New Website

Allen Brothers found it virtually impossible to prudently continue to use the Prominent Web Site for fear that other malicious acts would be perpetrated by Prominent and Seidensticker. (*Id*. at ¶ 12).  Consequently, despite the success that Allen Brothers had enjoyed from its use of the Prominent Web Site, despite the perils of attempting to deploy a new website in Allen Brother's busiest time of year*, (i.e.* Thanksgiving, Christmas and New Year's), and despite the

---

[3] Seidensticker also sought to implicate Allen Brothers' long-time outside corporate counsel, Robert I. Schwimmer, as the sender of the emails.  Seidensticker signed his first email "the protector RIS" using the lawyer's initials as well as a term Hatoff had used to describe the lawyer to Seidensticker.  In addition, subpoena results demonstrate that when Seidensticker set up the anonymous gmail account he used to conduct his nefarious email exchange, he used the lawyer's name as part of an fictitious alternate email address he provided.  Ex. 1 to Ex. A at ¶ 78.

fact that Allen Brothers had been so totally dependent on Prominent for almost all of Allen Brothers' technology functions, Allen Brothers was forced to immediately find another company to serve its critically important Internet-related needs. Allen Brothers retained independent contractors to develop a website to replace the Prominent Web Site as soon as possible. (*Id.* at ¶¶ 12-13).

While Prominent claims that Allen Brothers intentionally "stole" source code belonging to Prominent, Allen Brothers did not develop the source code that runs Allen Brothers' current website. (**Exhibit B**, Affidavit of Miguel Younger at ¶ 5, and **Exhibit C**, Affidavit of Nik Krimm, at ¶ 6). Instead, after learning of Prominent's misconduct and hurriedly seeking to obtain a website run by someone who had not demonstrated an intent to willfully harm Allen Brothers and ignore all conceivable business ethics, Allen Brothers retained two separate industry leading Internet firms -- The Rimm-Kaufman Group, a Web consulting firm for online retailers, and Solid Cactus, a Yahoo! Store website developer. (Ex. A at ¶¶14-15). The current Allen Brothers website was developed almost exclusively by Solid Cactus pursuant to a Store Development Service Agreement (the "Solid Cactus Agreement"). (*See* Ex. A, ¶¶ 15-16 and Ex. 2 thereto.) The Solid Cactus Agreement contains not only an express statement that "all source code used in the development and/or operation of the website" would be the exclusive property of Solid Cactus but also an express indemnity from Solid Cactus to Allen Brothers relating to any claim of copyright infringement. (*See* Ex. A at ¶17).

<u>**Argument**</u>

**I.    LEGAL STANDARD**

A temporary restraining order or a preliminary injunction is not a remedy that should be routinely granted. *See Chamberlain Group, Inc. v. Lear Corp.*, No. 05 C 3449, 2007 WL

1017751, *2 (N.D. Ill. March 30, 2007). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original). The bar is high for Prominent to establish entitlement to any injunctive relief. According to well-established principles of equity, in order for this Court to grant a preliminary injunction, it must find: 1) that Prominent has at least a reasonable likelihood of success on the merits; 2) that Prominent has no adequate remedy at law and Prominent will be irreparably harmed if the injunction does not issue; 3) the threatened injury to the Prominent outweighs the threatened harm the injunction may inflict on Allen Brothers; and 4) granting of a preliminary injunction will not disserve the public interest. *See Eveready Battery Co., Inc. v. Adolph Coors Co.* 765 F.Supp. 440, 444 (N.D. Ill. 1991), citing *Adams v. Attorney Registration and Disciplinary Comm'n,* 801 F.2d 968, 971 (7th Cir. 1986). Further, in cases like this, when only a parity of harms is shown, "the district court must apply a stricter standard." *American Hosp. Supply Co. v. Hospital Products Ltd.*, 780 F.2d 589, 607 (7th Cir. 1985) *quoting Roland Machinery Co. v. Dresser Indus.*, 749 F.2d 380, 392 (7th Cir. 1984). When there is no clear balance of hardships in favor of the injunction, the moving party "must show that it is more likely than not to win." *Id*.

Furthermore, Prominent has the significant burden of proving each of the preliminary injunction factors. "A preliminary injunction is an extraordinary remedy, available only to plaintiffs who carry the burden of persuasion as to all four factors." *See Eveready*, 765 F.Supp. at 444 (N.D. Ill. 1991) citing *Signode Corp. v. Weld-Loc Systems, Inc.,* 700 F.2d 1108, 1111 (7th Cir. 1983). In this case, Prominent has not and cannot establish any of the four factors necessary for a temporary restraining order or preliminary injunction. Because "[i]t is not the province of

8

the Court to issue preliminary injunction relief to rectify every situation that a plaintiff may protest as unfair" *IXL Inc., v. AdOutlet.Com, Inc.,* 2001 WL 315219, *8 (N.D. Ill. 2001), and because Prominent cannot establish the four factors necessary, this Court should deny Prominent's TRO Motion.

## II.    PROMINENT HAS NOT DEMONSTRATED THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM

### A.    Prominent's Massively Unclean Hands Warrant Denial of Equitable Relief.

While Prominent seeks to completely obscure this fact in its papers, Allen Brothers was forced to develop a new website in an expedited fashion entirely due to the egregious and outrageous misconduct perpetrated by Prominent and its principal Kurt Seidensticker and as set forth in detail in both the Hatoff Affidavit and the State Court Case.  The grievous misconduct alone by Prominent and Seidensticker warrants denial of the TRO Motion based on their unclean hands.  Indeed, "[t]he doctrine of unclean hands prevents a court of equity from granting relief to a plaintiff whose conduct has been unconscionable or tainted with bad faith."  *Great Western Cities, Inc. v. Binstein*, 476 F.Supp.827, 832 (N.D. Ill. 1979) (preliminary injunction denied where plaintiff sought equitable relief and failed to show that it was not guilty of the alleged prior fraudulent conduct towards defendants).  Furthermore, the burden is on the party seeking equitable relief to demonstrate "at the threshold that it has come to equity with clean hands."  *Id.* at 833.

Prominent's filings are devoid of any reference to the pending State Court Case.  This is so because Prominent wished to conceal from this Court the monumental acts of perfidy and theft committed by Seidensticker and Prominent detailed in the State Court Case. Prominent and Seidensticker's insidious conduct alone warrants denial of the TRO Motion based on Prominent's  unclean hands.  "An obvious sensible application of the principal [of unclean

9

hands] is to withhold an equitable remedy that would encourage, or reward (and thereby encourage), illegal activity ..." *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir., 1985) (under the doctrine of unclean hands, the plaintiff's fault in the situation may be relevant to determining the appropriate remedy); *see also Innovative Clinical Solutions, Ltd. v. Clinical Research Center*, 173 F. Supp. 2d 826, 834 (C.D. Ill. 2001) (plaintiff's motion for a temporary restraining order was denied because its breach precipitated the problem).

**B.    Prominent's Applied-For Copyrights are of Questionable Validity.**

A fundamental requirement to bring a copyright infringement action is the existence of a valid copyright. *See Capital Records, Inc. v. Mattingley,* 461 F.Supp.2d 846, 850 (S.D. Ill. 2006), *see also* 17 U.S.C. §501(a). Here, Prominent holds no registered copyright, but only claims that it applied for copyrights in the weeks prior to filing this suit.[4] "While copyright ownership and protection attach at the time a work is created, *a suit for infringement* cannot be brought until the copyright owner registers a copyright or has a registration application refused." *George S. May Intern. Co. v. Hostetler,* No. 04 C 1606, 2004 WL 1197395, *2 (N.D. Ill. May 28, 2004), citing 17 U.S.C. § 411(a); *Pickett v. Prince,* 207 F.3d 402, 404 (7th Cir. 2000).

**C.    Allen Brothers' Owns the Rights in the Look-And-Feel of the Website.**

Throughout Prominent's TRO Motion, Prominent attempts to claim that the Allen Brothers Website could infringe based on alleged similarities in the "look-and-feel" of the websites. (*See e.g.* Plaintiff's Memorandum in Support of its Motion at p.6.) However, upon Prominent's material breaches of the Development Agreement and the resulting termination, Prominent lost any ownership rights it possessed in the look-and-feel of the website. (*See*

---

[4] It is notable that while Prominent claims it launched the Allen Brothers website in February of 2005, no copyrights were obtained at that time or for more than two and one-half years thereafter. Instead, the claimed copyrights that the action is based upon were applied for on October 7, 2007 and November 8, 2007, the latter being the very day on which this action was filed.

Plaintiff's TRO Motion, Ex. 1(A), §5(C)).    Because Prominent's material breach of the Development Agreement's confidentiality provisions effectively terminated the Agreement, as did Allen Brothers' assertion of claims in the State Court Case against Prominent, Allen Brothers owns the "look-and-feel" of the Old Allen Brothers Website and Prominent possesses no claim based on any alleged use of that look-and-feel.[5]

### III.    PROMINENT CANNOT ESTABLISH EITHER IRREPARABLE INJURY OR LACK OF AN ADEQUATE LEGAL REMEDY

#### A.    Irreparable Harm Should Not Be Presumed and Prominent Has Failed to Establish Any

While Prominent claims that there is a presumption of irreparable harm in cases such as this, Prominent ignores the United States Supreme Court's decision in *Ebay Inc. v. Mercexchange, L.L.C.*, 126 S.Ct. 1837, 1840 (2006) (stating that "this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed").    The 2006 holding in *Mercexchange* has been applied directly to copyright infringement cases.    For example,  in *Allora, LLC  v. Brownstone, Inc.,* the district court refused to presume irreparable harm: "this Court will not *presume* irreparable harm and likelihood of success on the merits following a prima facie showing of copyright infringement, but will instead treat copyright cases in the same manner as any other civil action requesting a preliminary injunction. That is, Plaintiff must satisfy the traditional test…"  *Allora,* No. 01-cv-87, 2007 WL 1246448 at *5 (W.D.N.C.  April 27, 2007).

---

[5] Another of the many facts that Prominent attempts to obscure from the Court is the fact that the Development Agreement incontrovertibly preserves to Allen Brothers all intellectual property rights in the content on the website, including all text and photography.  It is that text and photography in large part that establish the look-and-feel of the site.  Development Agreement, ¶ 5(A)(3).

Furthermore, sister courts in the Northern District of Illinois have followed *Mercexchange*, refusing to discard a full analysis of the traditional factors in the injunction context, declining to presume irreparable harm and instead requiring the moving part to assert reasons why it would be irreparably harmed in order to obtain preliminary relief. *See e.g. Chamberlain Group, Inc. v. Lear Corp.*, 2007 WL 1017751, * 5-6 (N.D. Ill. March 30, 2007).

While Prominent's brief states that its reputation and goodwill will be irreparably harmed due to Allen Brother's control of a website that is alleged to include code created by Prominent, there is no support for this argument. In fact, Prominent apparently argues for the creation of a heretofore unrecognized "associational goodwill" based on a claim that customers supposedly knew that it had designed Allen Brother's previous website and would somehow confuse the current Allen Brothers' website with the prior site designed by Prominent. Prominent fails to cite to any case law that supports its theory. Moreover, Prominent does not explain how consumers who had used the Allen Brothers website created by Prominent would believe the code used to run it belonged to Prominent, particularly in light of the fact that the only copyright noted in connection with the Allen Brothers website developed by Prominent referred to Allen Brothers. Plainly featured on every page of that website was a statement: "© 2007 Allen Brothers, Inc., All Rights Reserved." (*See, e.g.* **Exhibit D** 2007 Home Page from www.allenbrothers.com (publicly available through the "Wayback Machine" at www.archive.org)).[6]

---

[6] Yet another example of Prominent's unclean hands in this matter is its attempt to mislead this Court to believe that Prominent's source code contained a copyright legend. Three of the four "samples" of source code submitted by Prominent as part of Ex. B to the Affidavit of Laura Seidensticker include a statement "Copyright (c) 2005 by Prominent Consulting, LLC" within the actual code. In fact, no such statement appeared in the source code for those pages as they contemporaneously appeared on the Internet. *See* **Exhibit E**, comparing pages from Seidensticker Affidavit Ex. B (*see* line 4 of each page) with actual code from the Old Allen Brothers Website.

The single case that Prominent does cite does not support Prominent's position, as the proposition that Prominent tries to establish from that case -- that irreparable harm should be presumed because of potential damage to Prominent's reputation -- arises in the portion of the case analyzing a trademark claim and relates to a trademark concept of harm to reputation. *See Ty, Inc.* v. *West Highland Publishing, Inc.,* No. 98 C 4091,1998 WL 698922, *19-20 (N.D. Ill. Oct. 5, 1998). There is no mention of any trademark dispute in Prominent's complaint.

Rather than *Ty, Inc.*, an apposite case is *IXL, Inc. v. Adoutlet.com*, No. 01 C 0763, 2001 WL 315219 (N.D. Ill. March 29, 2001), where, similar to the case at bar, the facts of the situation involving a source code license were found to not give rise to irreparable harm:

> This is not a case where a competitor is taking a plaintiff's intellectual property and using it to the plaintiff's competitive disadvantage. Nor is this a case in which a defendant is depriving plaintiff of use of property; here iXL has no desire to get the source code back, and no use to make of it if the source code was returned. And, this is not a situation in which any loss to iXL is not measurable (and remediable) by money; to the contrary, the contract price represents iXL's valuation of the intellectual property.

*IXL, Inc.,* 2001 WL 315219 at *13. Accordingly, Prominent's TRO motion must be denied because Prominent cannot establish that it would be irreparably harmed if injunctive relief is not granted. *See Eveready*, 765 F.Supp. at 444 (N.D. Ill. 1991).

### B.    Damages are an Adequate Remedy for any Alleged Wrong.

On the very first page of Prominent's TRO brief, Prominent concedes the fact that demonstrates that money damages are a wholly adequate remedy for any claim that the Court ultimately finds to have merit. Prominent states that it developed the website at issue "in exchange for a commission based on Allen Brothers' internet sales." (*See* Plaintiff's Memorandum in Support of its Motion at p. 1). Far from a situation where there is no readily ascertainable manner of calculating the value of Allen Brothers' use of the Old Allen Brothers

Website in the event any infringement is found, in this situation there is a contract negotiated between the precise parties to this dispute in which they agree upon the exact manner to calculate the value of the website Prominent claims to have been infringed -- the commissions paid on Allen Brothers' sales. For this reason alone, Prominent is not entitled to injunctive relief and its TRO must be denied. *See Windgate Software, LLC v. Minnesota Computers, Inc.*, 504 F. Supp. 2d 582, 587 (D. Minn. 2007) (finding that when a party's alleged injury can be remedied in a suit for money damages, the party does not demonstrate irreparable harm or inadequate remedy); *see also Dow Jones & Co., Inc. v. Board of Trade of City of Chicago*, 546 F. Supp. 113, 122 (D.C.N.Y 1982)("Some showing of irreparable harm is necessary because the works in issue are not direct competitors … If any damage has been wrought by the [defendant's] copying, and if that copying constitutes [copyright] infringement, money damages, either actual or statutory, will adequately compensate [plaintiff].").[7]

## IV.    THE HARM THAT WILL RESULT TO ALLEN BROTHERS FROM INTERFERENCE WITH ITS WEBSITE DURING ITS BUSIEST SEASON JUSTIFIES DENIAL OF THE MOTION

As a leading purveyor of exclusive food products, including fine meats and other foods to individual retail consumers, Allen Brothers does a substantial portion of its annual retail business during the holiday season, with the fourth calendar quarter (and particularly the last two months of the year) typically accounting for between 40-50% of Allen Brothers' annual retail revenue. Ex. A., ¶¶ 23-24. Those facts are well known to Prominent, given its broad role in analyzing Allen Brothers' Internet sales during the time Prominent hosted Allen Brothers' website.

---

[7] The fact that Prominent alleges in its Complaint that it has suffered damages in an amount to be determined at trial and requests monetary relief is a concession that money damages are calculable and adequate. *See Martin v. Wal-Mart Stores, Inc*., No. 07 C 3458, 2007 WL 3231414, *3 (N.D. Ill. Oct. 26, 2007) ("Rather than alleging that her injury is irreparable, however, plaintiff has requested an award of money damages - an admission that her injury is not irreparable.").

Viewed in this light, Prominent's failure to bring this action and the TRO Motion promptly after finding out about the claimed infringement is simply another demonstration that Prominent's real goal is to seek to harm Allen Brothers' business by trying to convince this Court to allow Prominent to interfere with the operation of Allen Brothers' website. The harm to Allen Brothers from any interruption in its website, and interference with customers' ability to place orders over the website, would be extraordinary. (Ex. A, ¶¶20-23). In fact, while Allen Brothers does not believe there are any circumstances here that would justify an order shutting down its website, such an action would likely cause Allen Brothers from $8-9 million in harm as well as severely damaging Allen Brothers' valuable brand. *Id.*

The immense harm that will result to Allen Brothers from shutting down its website during Allen Brothers' busiest season is reason alone to deny the TRO Motion. Several courts in this district have relied upon precisely that fact in copyright infringement cases brought around the holidays to deny injunctive relief. For example, in *Frederick Atkins, Inc. v. Carson Pirie Scott & Co., Inc.*, No. 99 C 7838, 1999 WL 1249342, *1 (N.D. Ill. Dec. 13, 1999), the court noted that "[i]f the harm to the defendant significantly outweighs the harm to the plaintiff to a significant degree then the injunction must be denied regardless of the plaintiff's likelihood of success." The court went on to deny the plaintiff's request for TRO for alleged copyright, trademark and trade dress infringement based on the fact that "given the seasonal nature of the goods and the short amount of time remaining before Christmas, the defendants would suffer great irreparable harm if [plaintiff's] motion were granted." *Id.* at *3. *See also Caterpillar, Inc. v. Walt Disney Co.*, 287 F. Supp.2d 913, 923 (N.D. Ill. 2003) (denying TRO for alleged trademark infringement based on balance of the harms in part due to "loss of more time during the holiday season"). For the same reasons that warranted denial of injunctive relief in those

15

cases, the Court here should deny the TRO Motion because the harm to Allen Brothers so greatly outweighs any harm to Prominent, particularly being that any harm to Prominent is entirely speculative.[8]

## V.    PROMINENT'S REQUEST FOR INJUNCTIVE RELIEF IS MOOT AS THE INFRINGING CONTENT ALLEGED BY PROMINENT DOES NOT EXIST ON THE CURRENT ALLEN BROTHERS WEBSITE

The affidavits of Miguel Younger and Nik Krimm, submitted in the separately bound volume attached hereto as Exhibits B and C, respectively, conclusively establish that the allegedly infringing source code claimed by Prominent to exist on the Allen Brothers Website *in fact does not exist on that site*.  With respect to every specific example provided by Prominent as to alleged overlap of code, the affidavits from the independent contractors who developed the code for the Allen Brothers Website establish that the allegedly infringing code is no longer on the Allen Brothers Website, if it ever was.  In particular, Nik Krimm, who developed the shipping calendar running on Allen Brothers website, states that the code that Prominent claims is used to run that calendar was not the code running the calendar as of no later than November 7, 2007, the day before Prominent filed its complaint and more than a week prior to Prominent filing the TRO Motion.  Prominent was either negligent in preparing its motion in claiming the code referred to in the Seidensticker Affidavit appears on the Allen Brothers Website or has intentionally sought to mislead the Court on this point.  Regardless of which it is, Prominent ignores the fact that very significant changes have been made to the Allen Brothers Website following Prominent's first assertions of infringement tendered to Allen Brothers in early October 2007.

---

[8] The public interest also would be disserved by awarding the equitable relief sought by Prominent.  There is no benefit to the public from interfering with the holiday shopping of consumers who have traditionally used Allen Brothers website to purchase items for their holiday entertaining as well as for gifts for their friends, families and business contacts.

The absence from the current Allen Brothers' Website of the code that Prominent alleges to infringe its intellectual property rights moots Prominent's request for injunctive relief and provides a wholly independent basis for denying the TRO motion.  See *M-F-G Corp. v. EMRA Corp.*, 817 F.2d 410, 411(7th Cir. 1987)(voluntary discontinuation of offending conduct makes an entry of an injunction unnecessary if there is little likelihood of recurrence).

## VI.   PROMINENT'S ACTIONS DO NOT DEMONSTRATE ANY EXIGENCY OR WHY IMMEDIATE EQUITABLE RELIEF IS NECESSARY

Prominent has not established any exigency in connection with this matter justifying the drastic remedy of a TRO and Prominent does not even attempt to show why it took so long to bring its action and motion for equitable relief.  Prominent states in its pleadings that it has known *since September 29, 2007* that Allen Brothers was utilizing a new website rather than the one developed by Prominent. (*See* Plaintiff's Complaint, ¶26).  Nevertheless, and despite Prominent's allegations that it was apparent to it that the new Allen Brothers website used source code "stolen" from Prominent, Prominent did not initiate this lawsuit until almost six weeks thereafter, on November 8, 2007.  Even then, Prominent did not promptly file the TRO Motion.  Instead, Prominent waited a full week after filing its complaint, or until almost seven weeks following its discovery of Allen Brothers' new website, to bring the TRO Motion.

Prominent's conduct demonstrates the absence of any exigency in this matter.  Because such exigency if a fundamental requirement in order to justify the drastic remedy of a temporary restraining order, its absence is reason alone for this Court to deny Prominent's request for a TRO.  *See Drummond American Corp. v. Murphy*, No. 87 C 5642, 1987 WL 16244, *5 (N.D. Ill. Aug. 26, 1987) ("Temporary restraining orders are considered drastic remedies which are not to be granted lightly.").  Prominent's failure to bring promptly this action and the TRO Motion also constitutes laches, providing a separate ground to deny the TRO Motion.  *New Era Publications*

*Int'l v. Henry Holt & Co., Inc.*, 684 F. Supp. 808, 809 (S.D.N.Y. 1988) (denying TRO in copyright infringement case because "for reasons of strategy or neglect or both, plaintiff has been tardy in taking steps to seek this relief").

## VII.    IN THE UNLIKELY EVENT THAT THIS COURT GRANTS AN INJUNCTION, IT SHOULD REQUIRE PROMINENT TO POST A $9 MILLION BOND

Before a Court grants a temporary restraining order, the moving party must post a bond as security for the party being enjoined. *Ty, Inc. v. Publications Intern. Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002); *Fed. R. Civ. P. 65(c)* ("No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.")  Indeed, "absent extraordinary circumstances, the court errs in not granting [a bond]."  *Reinders Brothers, Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 54 (7th Cir. 1980).  When determining the amount of the bond, the Court attempts to "ensure that plaintiff will be able to pay all or at least some of the damages defendant incurs from the preliminary injunction, if it turns out to have been wrongfully issued."  *Geneva Assur. Syndicate, Inc. v. Medical Emergency Services Associates (MESA) S.C.*, 1992 WL 92034, *12 (N.D. Ill. 1992), quoting *Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385 (7th Cir. 1983).

The economic harm that Allen Brothers will suffer should a temporary injunction be entered against it that interferes with Allen Brothers' ability to accept Internet orders over the holiday season is approximately $8 to $9 million (Ex. A, ¶ 24), representing Allen Brothers' likely lost sales during that period.  Accordingly, in the event the Court determines that some

injunctive relief is appropriate, Allen Brothers' requests a bond in the amount of nine million dollars ($9,000,000).[9]

## VIII.   CONCLUSION

For the reasons set forth herein, Allen Brothers, Inc. respectfully requests that this Court deny Prominent Consulting, LLC's Motion for a Temporary Restraining Order and Preliminary Injunction.


Dated:   November 20, 2007                        Respectfully submitted,


                                        **ALLEN BROTHERS, INC.**

                            By:    /s/          Charles B. Leuin
                                           One of Its Attorneys


Charles B. Leuin (ARDC No. 6225447)
Tanisha R. Jones (ARDC No. 6283173)
**GREENBERG TRAURIG, LLP**
77 W. Wacker Drive, Suite 2500
Chicago, Illinois  60601
T: (312) 456-8400
F: (312) 456-8435

*Attorneys for Defendant Allen Brothers, Inc.*

---

[9]   Prominent again attempts to mislead the Court by stating the Development Agreement contains a waiver of bond applicable to this situation.  In fact, the provision to which Prominent refers is inapplicable by its terms to this matter, applying solely to alleged breaches of the confidentiality provision of the Development Agreement.  *See* Plaintiff's TRO Motion, Ex. 1(A), Section 13(f) ("a party damaged by a breach of the terms of *this Section 13*, in addition to any other remedies, shall be entitled to the remedies of injunction, without the posting of a bond . . .").  Since Prominent is not seeking a temporary restraining order against Allen Brothers for a breach of confidentiality under section 13 of the Development Agreement, the terms of section 13(f) do not apply here.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2007, I electronically filed the foregoing **ALLEN BROTHERS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered parties.

By:  /s/      Charles B. Leuin
             One of Its Attorneys

Charles B. Leuin (ARDC No. 6225447)
Tanisha R. Jones (ARDC No. 6283173)
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 2500
Chicago, Illinois  60601
T: (312) 456-8400
F: (312) 456-8435

*Attorneys for Defendant Allen Brothers, Inc.*