IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PROMINENT CONSULTING, LLC,

              Plaintiff,

v.

ALLEN BROTHERS, INC.,

              Defendant.

No. 07 C 6357

Judge Robert M. Dow, Jr.

Magistrate Judge Morton Denlow

**PLAINTIFF PROMINENT LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR ABSTENTION**

## I.    INTRODUCTION

Through its Motion for Abstention ("Motion"), Defendant Allen Brothers, Inc. ("Allen Brothers") seeks to stay this action pursuant to the *Colorado River* doctrine pending the final resolution of a state court case involving Allen Brothers, Prominent Consulting, LLC ("Prominent"), and four other defendants who are not parties in this action. The Court should deny Allen Brothers' Motion for at least the two following principal reasons:

First, the Seventh Circuit, and every other Circuit examining the issue, has held that abstention is not appropriate when the case presents issues over which the federal courts have exclusive jurisdiction. In fact, the Seventh Circuit has stated that the district court has no discretion to stay proceedings as to claims within its exclusive jurisdiction. Here, the Court has exclusive jurisdiction over Prominent's copyright claims. Accordingly, abstention is inappropriate and the Court need not consider how the *Colorado River* factors apply.

Second, even if the Court had discretion to abstain from hearing Prominent's copyright infringement claim, abstention is not warranted because the state and federal court cases are not parallel proceedings, and exceptional circumstances do not otherwise exist to stay this case.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Federal Case

This is a case (the "Federal Case") brought by Prominent for injunctive relief and damages relating to Allen Brothers' copyright infringement of Prominent's intellectual property. (Compl. ¶ 1.) [Docket No. 1.]  More specifically, Prominent possesses copyrights in the computer source code it used to create a website for Allen Brothers.  (*Id*. ¶¶ 1, 37.)  Despite Prominent's ownership of the source code, Allen Brothers took the code and, without notifying Prominent, used it without Prominent's authorization to create a new website that was not hosted or managed by Prominent.  (*Id*. ¶¶ 38-39.)

Allen Brothers sells meats and other foodstuffs to individuals and commercial customers in a variety of ways, including through a printed catalog and the Internet.  (*Id*. ¶ 3.)  Prominent provides various enterprise technology consulting and marketing-related services.  (*Id*. ¶ 2.)  In April 2004, Allen Brothers and Prominent decided to pursue an agreement wherein Prominent would design, develop, and operate a new website for Allen Brothers.  (*Id*. ¶ 4.)  Throughout the remainder of 2004, in furtherance of the agreement, Prominent worked to develop the new website, including by authoring and creating software for the new site.  (*Id*. ¶ 5.)  Prominent's employees put forth significant effort to design, develop and operate the new website and related software, and launched the new Allen Brothers' website on February 17, 2005.  (*Id*. ¶¶ 6-7.)

On January 11, 2005, prior to the launch of Allen Brothers' new website, the parties memorialized their working relationship by entering into a Web Site Development and License Agreement ("Development Agreement"), a copy of which is attached to the Complaint as Exhibit 1.  (*Id*. ¶ 10.)  Among other things, the Development Agreement addresses services, fees, and the ownership and usage of the parties' respective intellectual property, and confirms Prominent's property rights in the software it developed to run the website.  (*Id*. ¶ 11, 13.)  Prominent also

- 2 -

possesses copyrights in the software it used to develop and operate the website it created for Allen Brothers, including in relation to the original source code developed and the website's Shipping Calendar. (*Id*. ¶ 37.) The Development Agreement expressly states: "*The parties further agree that Allen Brothers shall not reverse engineer or otherwise try to access the source code of the New Web Site under any circumstances*." (Ex. 1, § 5.C.) (emphasis added.)

In direct contravention of this provision and Prominent's intellectual property rights, Allen Brothers accessed Prominent's source code, including HTML source code, unique tracking code and JavaScript code, to develop a new website. (*Id*. ¶ 40.) Allen Brothers' conduct and activities were and are unauthorized and constitute copyright infringement under the United States Copyright Act, 17 U.S.C. § 101, *et seq*. (Compl. ¶ 41.) Allen Brothers has also violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4). (*Id*. ¶ 46-54.)

Although, as shown in part below, there are numerous contractual and other disputes between Allen Brothers and Prominent, this Federal Case relates solely to Allen Brothers' unauthorized use of Prominent's copyrights.

### B. The State Case

#### 1. Allen Brothers' Claims

Allen Brothers and Prominent are also parties to a lawsuit pending in the Circuit Court of Cook County captioned *Allen Brothers, Inc. v. Scott Marland, Debbie Marland, Prominent Consulting, LLC, Kurt Seidensticker and echoMountain LLC*, 07 CH 11877 (the "State Case"). As the caption indicates, the State Case involves parties other than Allen Brothers and Prominent. The claims in the State Case are also much broader than those in the Federal Case.

Allen Brothers has filed a Second Amended Complaint ("SAC") in the State Case. Allen Brothers therein alleges that its former employee, Scott Marland ("Marland"), accessed and printed certain confidential information belonging to Allen Brothers shortly before his

- 3 -

resignation. (SAC ¶ 39-50.) (A copy of Prominent's Second Amended Complaint is attached as Exhibit A to Allen Brothers' Appendix to Motion for Leave to File [Docket No. 16].) Allen Brothers alleges that in accessing and printing this information, Marland breached his employment agreement and fiduciary duties to Allen Brothers, and that as such, Marland should be required to forfeit monies owed to him under a Phantom Stock Plan he had entered into with Allen Brothers. (SAC ¶¶ 90-120.)

Allen Brothers' claims against Prominent relate to emails allegedly sent by Prominent employee Kurt Seidensticker ("Seidensticker") to Marland. Allen Brothers alleges that Seidensticker anonymously emailed Marland and his wife, Debbie Marland (also a Defendant in the State Case), a number of months after Marland resigned from Allen Brothers to warn Marland that Allen Brothers was planning to sue him. (*Id*. ¶¶ 70-82.) Allen Brothers also alleges that these emails contained confidential information of Allen Brothers and recommendations that Marland take steps to hinder Allen Brothers' efforts to bring a case against him. (*Id*.) Allen Brothers alleges that Seidensticker obtained the information he provided to Marland by reviewing Allen Brothers' email. (*Id*. ¶¶ 78-79.) Based on the allegations, Allen Brothers has asserted claims against Prominent and Seidensticker for breach of contract, breach of fiduciary duty, violation of the Illinois Trade Secrets Act, tortious interference with contract, civil conspiracy, spoliation of evidence and fraud.[1]

With respect to Defendant echoMountain, LLC ("echoMountain"), Allen Brothers alleges that Allen Brothers provided Prominent with money to perform marketing services on behalf of Allen Brothers, and that some of this money was improperly used to drive traffic to echoMountain's webpage. (SAC ¶¶ 86-89.)

---

[1]Prominent and Seidensticker have filed in the State Case a motion to dismiss Allen Brothers' claims for breach of fiduciary duty, violation of the Illinois Trade Secrets Act, tortious interference, civil conspiracy, spoliation, and fraud.

### 2.     Prominent and Marland's Claims

Prominent has filed multiple Counterclaims ("Prominent Counterclaims" or "PCC") in the State Case against Allen Brothers.  (A copy of Prominent's Counterclaims is attached hereto as Exhibit A.)  Prominent therein alleges that Allen Brothers had been seeking for some time to get out of the parties' Development Agreement because Allen Brothers believed that the commissions being paid to Prominent thereunder were excessive. (Prominent received a commission on Allen Brothers' internet sales in exchange for designing and maintaining the website.)  (PCC ¶¶ 1, 28-55.)  Allen Brothers' attempts at renegotiation included express and implied threats of physical and other force against Prominent and its principals and their families. *Id*.

Eventually, Allen Brothers simply stopped paying Prominent, and Prominent alleges that Allen Brothers owes it more than a million dollars for work performed and that Allen Brothers' failure to pay constitutes a breach of the Development Agreement.  (*Id*. ¶¶ 60-69.)  Prominent also alleges that Allen Brothers' unauthorized use of the source code developed by Prominent is a breach of the intellectual property ownership provisions in the Development Agreement.  (*Id*. ¶¶ 70-79.)

Marland also has filed counterclaims ("MCC") against Allen Brothers in the State Case. In his claims, Marland alleges that he was verbally abused and physically threatened on repeated occasions during his time working for Allen Brothers, and that this hostile work environment lead to his resignation/constructive discharge.  (MCC ¶¶ 39-61.)  (A copy of Marland's Answer, Affirmative Defenses and Counterclaims is attached hereto as Exhibit B.)  Marland further alleges that he was the victim of hostility, intimidation, aggression, humiliation and mental and verbal abuse from Allen Brothers' management.  (*Id*. ¶ 56.)  As a result of this alleged hostility, Marland brings claims of breach of contract/constructive discharge and intentional infliction of

emotional distress against Allen Brothers. (*Id*. ¶¶ 51-66.) Marland also seeks to enforce his Phantom Stock Plan (*id*. ¶¶ 67-75), and alleges that Allen Brothers failed to pay him bonuses and other monies owed to him under his employment agreement. (*Id*. ¶¶ 76-87.) Through his affirmative defenses, Marland also argues against the enforceability of a non-compete agreement he had with Allen Brothers. (*Id*., Fourth Affirmative Defense, p. 60.)

## III.     ABSTENTION UNDER *COLORADO RIVER* IS NOT WARRANTED

### A.     *COLORADO RIVER* DEFERENCE IS NOT APPROPRIATE WHERE FEDERAL JURISDICTION IS EXCLUSIVE

The Seventh Circuit has held that *Colorado River* deference is almost never appropriate where the federal action involves claims over which the federal courts have exclusive jurisdiction. *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 212 (7th Cir. 1988). The primary issue before this Court is Prominent's claim for copyright infringement. (Compl. ¶ 1.) The federal courts have original and exclusive jurisdiction over copyright claims. 28 U.S.C. § 1338. Accordingly, abstention is inappropriate here.[2]

### 1.     *Colorado River* Provided a Narrow Standard of Deference That Does Not Apply When Federal Courts Have Exclusive Jurisdiction

There is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246 (1976). In *Colorado River*, the Supreme Court created a narrow and extraordinary exception to this obligation by allowing federal courts to stay or dismiss actions in deference to parallel and ongoing state proceedings in circumstances where abstention doctrines do not apply. *Id. See also Moses H. Cone Memorial Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 938 (1983) (describing *Colorado River* as an "exceptional-

---

[2]The Seventh Circuit has stated that, although commonly referred to as "*Colorado River* abstention," *Colorado River* adopted a standard of deference distinct from traditional abstention doctrines. *Medema*, 854 F.2d at 212, n. 1.

circumstances test"). "The circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id*. As the Seventh Circuit stated:

> "The Court's reluctance to create an expansive exception to jurisdiction is understandable. While such an exception is necessary in a few instances to ensure judicial economy and deter abusive 'reactive' litigation, a tension exists between this judge-made doctrine and the explicit statutes conferring federal jurisdiction. Congress has made a considered judgment that federal jurisdiction is appropriate in certain classes of cases. Where the statutory prerequisites are met, courts should be extremely wary about refusing to hear a case based on sometimes impalpable notions of efficiency."

*Medema*, 854 F.2d at 213.

In short, *Colorado River* provides an extremely narrow exception to the obligation of the federal courts to exercise the jurisdiction given them. This exception virtually disappears when the matter before the Court is one over which the federal courts have exclusive jurisdiction. The reason for this is as follows: "Congress grants exclusive federal jurisdiction in order to cultivate uniformity and expertise, and sometimes to ensure the use of more liberal federal procedural protections. All three purposes are thwarted by deference to concurrent state proceedings." *Id*. (citations omitted).

Quoting Justice Brennan, the Seventh Circuit noted that "the preclusive effect of a state-court determination of a claim within the exclusive jurisdiction of the federal courts is an unresolved and difficult issue." *Id*. at 214 (quoting *Calvert Fire Insurance Co. v. Will*, 437 U.S. 655, 674 (1978) (Brennan, J., dissenting)). The Court further stated that "where Congress grants exclusive federal jurisdiction, that policy is "the precise opposite" of the efficiency concerns underlying Colorado River." *Id*. Accordingly, if the state court judgment is accorded res judicata effect, the exclusive jurisdiction given to the federal courts would be "effectively thwarted." *Id*.

2.    **The Authority Cited By Allen Brothers Does Not Support Abstention**

In its brief, Allen Brothers ignores entirely whether it is even appropriate for the Court to examine and apply the *Colorado River* factors in light of the Court's exclusive jurisdiction over copyright claims. When it finally addresses the issue of exclusive jurisdiction, Allen Brothers briefly refers to *Medema* and suggests that *Medema* leaves open the possibility for deference even when the Court has exclusive jurisdiction. Allen Brothers is wrong.

In *Medema*, the Seventh Circuit squarely addressed the issue of whether *Colorado River* deference is ever appropriate where the federal action involves claims over which the federal courts have exclusive jurisdiction. 854 F.2d at 212. The Court examined a situation in which plaintiffs initially filed claims in state court that alleged various contract breaches and interference with prospective economic advantage. *Id*. The defendants in the state court case filed a joint answer, but on the same day also filed an action in federal district court alleging, among other things, violations of section 10(b) of the Securities Exchange Act of 1934. *Id*.

As with claims under the Copyright Act, Congress established exclusive federal jurisdiction over claims brought under the Securities Exchange Act of 1934. *Id*. at 213. The Court thus considered whether it could stay proceedings in light of its exclusive jurisdiction and concluded: "We agree with every court of appeals to decide this question that the district court has no discretion to stay proceedings as to claims within exclusive federal jurisdiction under the wise judicial administration exception." *Id*. (citations omitted). The Court elaborated:

> In sum, two overarching reasons lead us to hold that *Colorado River* does not apply where Congress has determined that exclusive federal jurisdiction is desirable. First, the clear congressional intent in such cases is to sacrifice a modicum of efficiency in order to further goals of expertise, uniformity and fairness. Second, if preclusive effect is not given to state law determinations of exclusively federal claims—a question that is still open—a stay does not advance *Colorado River*'s purpose of avoiding piecemeal litigation. Given these twin concerns, deference is not appropriate.

*Id*. at 215.

- 8 -

Notwithstanding this clear direction from the Seventh Circuit, Allen Brothers attempts to seize on the Court's acknowledgement—based on a prior Seventh Circuit case that allowed such a result—that certain factual scenarios may exist where the district courts could abstain under *Colorado River*. But the Court commented that under the unique facts of that case, "[t]he plaintiff had admitted in oral argument before the Supreme Court that its 1934 Act Claim was frivolous", and stated that "where the exclusively federal claim is frivolous, a stay is within the court's discretion." *Id*. This very narrow exception does not apply in these circumstances as Prominent has a viable copyright infringement claim. In fact, in its response to Prominent's motion for a temporary restraining order in this action, Allen Brothers all but admitted that it infringed Prominent's copyrights by emphasizing that it had recently changed its website so that it was no longer using Prominent's source code. (Allen Brothers' Opp. to Motion for TRO, pp. 16-17 [Docket No. 15].)

While *Medema* alone provides sufficient authority for the Court to deny Allen Brothers' Motion, it is worth noting that the Northern District of Illinois has applied *Medema* to cases involving allegations of copyright infringement. For example, in *Kupferberg, Goldberg, & Niemark, L.L.C., v. Father Son Pizza, Ltd.*, No. 95 C 3690, 1996 U.S. Dist. LEXIS 2901 (N.D. Ill. Mar. 7, 1996), the Court addressed allegations of copyright infringement. There, the Court stated that a stay is not appropriate where claims involve federal jurisdiction and held that it would be inappropriate to stay the federal action because federal courts have exclusive jurisdiction over copyright claims. *Id*. at *9-11.

Courts in other jurisdictions likewise have addressed *Colorado River* abstention in the copyright context and they have reached the same conclusion as the *Kupferberg* Court. *See Minucci v. Agrama*, 868 F.2d 1113, 1115 (9th Cir. 1989); *Zimmerman Group, Inc. v. Fairmont*

*Foods of Minnesota, Inc.*, 882 F.Supp. 892, 896 (D. Minn. 1994); *Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769 F.Supp. 1161, 1166 (D. Colo. 1991); *Google, Inc. v. Affinity Engines, Inc.*, No. C 05-0598, 2005 U.S. Dist. LEXIS 37369, *16 (N.D. Cal. Aug. 12, 2005).

Allen Brothers cites *International Jensen, Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273 (N.D. Ill. Aug. 27, 1996), to support its contention that abstention is appropriate. But that case is easily distinguishable from this one. The Court in *International Jensen* abstained from deciding the defendant's federal securities claim because it had an identical remedy under Delaware law, noting that in that case the federal remedy did not preempt state legislation altogether. 1996 WL 494273 at *16. Conversely, The Copyright Act provides that:

> "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright [...] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright [...] are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

17 U.S.C. 301(a) (West 2007).

Finally, Allen Brothers also cites *One Up, Inc. v. Webcraft Technologies, Inc.*, No. 87 C 3041, 1989 U.S. Dist. LEXIS 11313 (N.D. Ill. Sept. 21, 1989), but that case also is inapposite. There, the state court case included a declaratory judgment claim in which the court was asked to declare who had patent ownership rights under a license agreement. *Id.* at *6, 11. The parties did not dispute the validity of the patent. *Id.* at *15. Thus, according to the court, federal law likely would not have provided the rule of decision in the state court proceeding; rather, the court would rely on state contract law. *Id.* Conversely, Prominent's federal action in this case requires

- 10 -

an examination of Prominent's federal statutory rights, which only can be decided under federal law.[3]

### B.     Even if Considered, *Colorado River* Does Not Support Abstention

For the reasons stated above, the Court should not defer to the state court with respect to Prominent's copyright infringement claim.   In any event, the *Colorado River* factors weigh heavily against staying this case.   Abstention is justified only when there is parallel litigation and then only under exceptional circumstances.   *Colorado River*, 424 U.S. at 818.   Neither exists here.

### 1.     The Federal and State Actions Are Not Parallel

The existence of parallel litigation is a threshold consideration in determining whether abstention is warranted.  *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir. 1988).   Without "parallel state proceedings, Colorado River Abstention must be rejected without even reaching the [exceptional circumstances] factors." *Harris Trust and Savings Bank v. Olsen*, 745 F. Supp. 503, 507 (N.D. Ill. 1990).

In general, substantially the same parties contemporaneously litigating the same issues in two separate forums is required for cases to be considered parallel.  *Caminiti and Iatarola Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992).   The Seventh Circuit, however, has counseled that courts should "look not for formal symmetry between the actions, but for a substantial likelihood that state litigation will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr., Co.*, 780 F.2d 691, 695 (7th Cir. 1985).   Here, not only

---

[3]Allen Brothers apparently is going to argue that it had the *right* to steal Prominent's intellectual property, based on Allen Brothers' contention that Prominent breached the Development Agreement. (*See, e.g.*, Motion pp. 1-2.)   But as noted above, the Development Agreement itself states, "The parties further agree that Allen Brothers shall not reverse engineer or otherwise try to access the source code of the New Web Site *under any circumstances*."  (Ex. 1, § 5.C.) (emphasis added.)

does the State Case involve significantly more parties and significantly more issues, but the State Case will not dispose of all claims presented in the Federal Case.

### a.     The State Case is Much Broader Than the Federal Case

The parties and issues being litigated are considerably more narrow in the Federal Case than in the State Case. As demonstrated above and in the relevant pleadings, the State Case involves myriad claims and allegations not at issue in the Federal Case. This includes Allen Brothers' claims against Marland related to his alleged accessing and printing of confidential information. There also are non-compete issues between Marland and Allen Brothers as well as claims related to the enforceability of his Phantom Stock Plan. In addition, the State Case involves claims of trade secret misappropriation, evidence spoliation, fraud, breach of confidentiality provisions, conversion of marketing funds, and unjust enrichment. There are issues related to verbal and physical threats and an alleged hostile working environment at Allen Brothers, as well as physical threats made by individuals associated with Allen Brothers' against Prominent employees. Prominent has also brought claims related to Allen Brothers' failure to pay it more than a million dollars owed for work performed by Prominent. None of these issues are relevant in the Federal Case.

Accordingly, in light of the parties involved and the claims at issue in the State Case versus the much narrower litigation here between Allen Brothers and Prominent, the State and Federal Cases cannot fairly be considered parallel proceedings.

### b.     The State Case Will Not Dispose of All Claims Presented in the Federal Case

The Federal Case involves two narrow issues, including whether Prominent owns copyrights in its source code, and whether Allen Brothers infringed upon Prominent's copyrights in that source code. These issues will not be resolved by the state court.

Although intellectual property ownership issues will arise in the context of the Development Agreement, the State Case will not address or determine Prominent's statutory rights or the existence of copyright ownership beyond the parties' contract.  The state court's examination of Allen Brothers' infringement will also be limited to the contract.  Allen Brothers, for example, apparently will argue that the Development Agreement was breached and that, as a result, it was no longer bound by the intellectual property ownership provisions in the contract.  But this argument does not take into consideration Prominent's ownership of its copyrights outside the four corners of the contract.  Because the State Case will not be outcome determinative of Prominent's statutory rights, it will not resolve the claims presented here.

### 2.    <u>Exceptional Circumstances Do Not Exist To Stay the Federal Case</u>

The Seventh Circuit has identified ten factors that should be considered when deciding if an action should be stayed: (1) whether the state has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal pleadings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.  *Caminiti*, 962 F.2d at 701.  This Court must balance these factors weighing heavily the presumption favoring the exercise of jurisdiction.  *Moses H. Cone*, 460 U.S. at 16.

The first factor is inapplicable because there is no property at issue.  To the extent that Prominent's copyrights in its source code constitute "property" rights, then clearly the state court has not assumed jurisdiction over such property, and this factor thus weighs against abstention.

- 13 -

The second factor also militates against abstention.  Both parties, and a significant majority of the relevant witnesses, are located in Chicago, Illinois, making this Court a convenient forum.

With respect to the third factor, Allen Brothers argues that abstention is necessary to avoid piecemeal litigation.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."  *LaDuke v. Burlington N.R.R.*, 879 F.2d 1556, 1560 (7th Cir. 1989).  In arguing that proceeding in both the state and federal forums will create piecemeal litigation, Allen Brothers argues that Prominent seeks the same relief in both forums, and that it would be wasteful to proceed with both cases.

As explained above, however, the State Case will not determine Prominent's statutory rights, and will not decide whether Allen Brothers infringed Prominent's copyrights.  Moreover, if preclusive effect is not given to state law determinations of exclusive federal claims, a stay does not advance *Colorado River*'s purpose of avoiding piecemeal litigation and deference is inappropriate.  *Madema*, 854 F.2d at 215.

The fourth and seventh factors are a wash.  The inquiry here is "how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21.  Allen Brothers touts the progress made in the State Case, but all of this progress relates not to Allen Brothers' dispute with Prominent, but rather to its dispute with Marland.  Allen Brothers only recently added Prominent as a party to the state court proceedings.  In fact, Allen Brothers' answer in this Federal Case was filed prior to the answer filed by Prominent in the State Case.  To date, nobody from Allen Brothers or Prominent have been deposed in either proceeding (although the deposition of Todd Hatoff was scheduled to proceed on December 11, 2007 in relation to this case), and neither party has answered written discovery in either the state or federal court

proceeding.  Both proceedings are thus in their infancy and this factor does not weigh in favor of abstention.

The fifth factor—source of governing law—weighs strongly against abstention and, indeed, *prohibits* abstention.  As explained above, federal courts have exclusive jurisdiction over copyright claims.  It is inappropriate for federal courts to abstain where they have exclusive jurisdiction over the issues before them.  Accordingly, abstention is not appropriate here.

The sixth factor (the adequacy of state-court action to protect the federal plaintiff's rights) and eighth factor (the presence or absence of concurrent jurisdiction) also weigh heavily against abstention for the reasons stated above.  Congress granted the federal courts exclusive jurisdiction over copyright claims for numerous reasons, including to cultivate uniformity and expertise, and sometimes to ensure the use of more liberal federal procedural protections.  "All three purposes are thwarted by deference to concurrent state proceedings."  *Medema*, 854 F.2d at 213.

As for the ninth factor, the state court claims cannot be removed to federal court; however, the federal courts have exclusive jurisdiction over Prominent's copyright claims.

Finally, Allen Brothers argues that Plaintiff's federal claims are vexatious or contrived, and that the tenth factor thus weighs in its favor, but this is itself a contrived and baseless argument.  Prominent possesses copyrights in its website source code.  During briefing on Prominent's Motion for Temporary Restraining Order, Allen Brothers all but admitted that it used this source code to create a new website by arguing that a restraining order should not issue because it had *recently altered its website* such that it was no longer infringing Prominent's copyrights.  (Allen Brothers' Opp. to Motion for TRO, pp. 16-17.)  Thus, it is Allen Brothers, not Prominent, who is asserting a specious position in this case.

- 15 -

In sum, Allen Brothers can argue that only half of the *Colorado River* factors support abstention.  As shown, this is an overstatement, as far fewer factors weigh in favor of abstention. Regardless, many of the factors that weigh against abstention—those relating to source of law and the protection of Prominent's rights—weigh so heavily against abstention that Allen Brothers plainly cannot overcome the heavy presumption favoring the exercise of jurisdiction.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Prominent respectfully requests that this Court deny Allen Brothers' Motion for Abstention.

Dated: December 18, 2007                                Respectfully submitted,

PROMINENT CONSULTING, LLC

By:  s/ James V. Garvey
                                                                    One of Its Attorneys

James V. Garvey, Bar No. 06224992
Michael J. Waters, Bar No. 06280008
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
T: 312-609-7500
F: 312-609-5005

- 16 -