8.4. Subject to Section 6.3, IMIPM will continue to store the Deposit Materials without release pending (a) joint instructions from Depositor and FlexSAFE Beneficiary; (b) dispute resolution pursuant to Section 8.4; or (c) order of a court.

b.  If no Contrary Instructions are given to IMIPM, Depositor agrees that IMIPM shall deliver a copy of the Deposit Materials to the FlexSAFE Beneficiary who provides IMIPM with all of the following:

1.  Copy of the current License Agreement between Depositor and FlexSAFE Beneficiary;

2.  Written demand that a copy of the Deposit Materials be released and delivered to FlexSAFE Beneficiary;

3.  Written notice that the copy of the Deposit Materials being released to FlexSAFE Beneficiary only be used as permitted under the License Agreement;

4.  Specific delivery instructions along with any fees due IMIPM; and

5.  Written notice that the release of the copy of the Deposit Materials is pursuant to 11 United States Code Section 365(n) or other applicable federal or state bankruptcy, insolvency, reorganization or liquidation statute.

5.3  <u>Release Conditions.</u>  As used in this Agreement, "Release Condition" shall mean the existence of any one or more of the following circumstances, uncorrected for more than thirty (30) days:

a.  Entry of an order for relief under 11 of the United States Bankruptcy Code;

b.  The making by Depositor of a general assignment for the benefit of creditors;

c.  The appointment of a general receiver or trustee in bankruptcy of Depositor's business or property; or

d.  Action by Depositor under any state or federal insolvency or similar law for the purpose of its bankruptcy, reorganization, or liquidation.

5.4  <u>Right to Use Following Release.</u>  Unless otherwise provided in the License Agreement, upon release of the Deposit Materials in accordance with this Article 5, FlexSAFE Beneficiary shall have the right to use the Deposit Materials for the sole purpose of continuing the benefits afforded to FlexSAFE Beneficiary by the License Agreement.  FlexSAFE Beneficiary shall be obligated to maintain the confidentiality of the released Deposit Materials.

## ARTICLE 6 -- TERM AND TERMINATION

6.1    <u>Term of Agreement</u>. The initial term of this Agreement is for a period of one (1) year. Thereafter, this Agreement shall automatically renew from year to year unless (a) Depositor instructs IMIPM in writing that the Agreement is terminated; (b) IMIPM instructs Depositor and FlexSAFE Beneficiary in writing after its renewal date that the Agreement is terminated for nonpayment in accordance with Section 6.3; or (c) IMIPM reserves the right to terminate this Agreement, for any reason, other than nonpayment, by providing Depositor and FlexSAFE Beneficiary sixty (60) days written notice of its intent to terminate this Agreement. If the Deposit Materials are subject to another escrow agreement with IMIPM, IMIPM reserves the right, after the initial one year term, to adjust the anniversary date of this Agreement to match the then prevailing anniversary date of such other escrow arrangements.

6.2    <u>Term of FlexSAFE Enrollment</u>. Upon receipt by IMIPM of Depositor's executed Exhibit T, the FlexSAFE Beneficiary will be enrolled for an initial term of one (1) year, unless this Agreement terminates earlier, causing the FlexSAFE Beneficiary enrollment to terminate. Subsequent enrollment terms may be adjusted to the anniversary date of this Agreement and shall automatically renew from year-to-year unless (a) Depositor instructs IMIPM in writing to terminate the FlexSAFE Beneficiary enrollment; (b) FlexSAFE Beneficiary instructs IMIPM in writing to terminate the FlexSAFE Beneficiary; or (c) the enrollment is terminated by IMIPM for nonpayment in accordance with Section 6.3.

6.3    <u>Termination for Nonpayment</u>. In the event of the nonpayment of fees owed to IMIPM, IMIPM shall provide written notice of delinquency to all parties to this Agreement. Unless Depositor has instructed IMIPM to terminate FlexSAFE Beneficiary pursuant to Section 6.2(a), Depositor or FlexSAFE Beneficiary shall have the right to make the payment to IMIPM to cure the default. If the past due payment is not received in full by IMIPM within one (1) month of the date of such notice, then IMIPM shall have the right to terminate this Agreement at any time thereafter by sending written notice of termination to all parties. IMIPM shall have no obligation to take any action under this Agreement so long as any payment due to IMIPM remains unpaid.

6.4    <u>Disposition of Deposit Materials Upon Termination</u>. Subject to the foregoing termination provisions, and upon termination of this Agreement, IMIPM shall destroy, return, or otherwise deliver the Deposit Materials in accordance with Depositor's instructions. If there are no instructions, IMIPM may, at its sole discretion, destroy the Deposit Materials or return them to Depositor. IMIPM shall have no obligation to destroy or return the Deposit Materials if the Deposit Materials are subject to another escrow agreement with IMIPM or have been released to the FlexSAFE Beneficiary in accordance with Section 5.2.

6.5    <u>Survival of Terms Following Termination</u>. Upon termination of this Agreement, the following provisions of this Agreement shall survive:

    a.    The obligations of confidentiality with respect to the Deposit Materials;

    b.    The obligation to pay IMIPM any fees and expenses due;

    c.    The provisions of Article 8; and

    d.    Any provisions in this Agreement which specifically state they survive the termination of this Agreement.

## ARTICLE 7 -- IMIPM'S FEES

7.1    Fee Schedule. IMIPM is entitled to be paid its standard fees and expenses applicable to the services provided. IMIPM shall notify the party responsible for payment of IMIPM's fees at least sixty (60) days prior to any increase in fees. For any service not listed on IMIPM's standard fee schedule, IMIPM will provide a quote prior to rendering the service, if requested.

7.2    Payment Terms. IMIPM shall not be required to perform any service, including release of any Deposit Materials under Article 5, unless the payment for such service and any outstanding balances owed to IMIPM are paid in full. Initial fees are due upon receipt of a signed contract or receipt of the Deposit Materials whichever is earliest. Payments on all renewal and services invoices are due net thirty (30) days from date of invoice. If invoiced fees are not paid, IMIPM may terminate this Agreement in accordance with Section 6.3.

## ARTICLE 8 -- LIABILITY AND DISPUTES

8.1    Right to Rely on Instructions. IMIPM may act in reliance upon any instruction, instrument, or signature reasonably believed by IMIPM to be genuine. IMIPM may assume that any employee of Depositor or FlexSAFE Beneficiary who gives any written notice, request, or instruction has the authority to do so. IMIPM will not be required to inquire into the truth or evaluate the merit of any statement or representation contained in any notice or document. IMIPM shall not be responsible for failure to act as a result of causes beyond the reasonable control of IMIPM.

8.2    Indemnification. Depositor agrees to indemnify, defend and hold harmless IMIPM from any and all claims, actions, damages, arbitration fees and expenses, costs, attorney's fees and other liabilities ("Liabilities") incurred by IMIPM relating in any way to this escrow arrangement, except where it is adjudged that IMIPM acted with gross negligence or willful misconduct.

8.3    Limitation of Liability. In no event will IMIPM be liable for any incidental, indirect, special, exemplary, punitive or consequential damages, including, but not limited to, damages (including loss of data, revenue, and/or profits), costs or expenses (including legal fees and expenses), whether foreseeable or unforeseeable, that may arise out of or in connection with this Agreement; and in no event shall the collective liability of IMIPM exceed ten times the fees paid under this Agreement. The foregoing limitation of liability does not apply with respect to any acts of gross negligence, personal injury claims, property damage claims (excluding the Deposit), or intellectual property infringement.

8.4    Dispute Resolution. Any dispute relating to or arising from this Agreement shall be submitted to, and settled by arbitration by a single arbitrator chosen by the San Diego Regional Office of the American Arbitration Association in accordance with the Commercial Rules of the American Arbitration Association. The arbitrator shall apply California law. Unless otherwise agreed by Depositor and FlexSAFE Beneficiary, arbitration will take place in San Diego, California, U.S.A. Any court having jurisdiction over the matter may enter judgment on the award of the arbitrator. Service of a petition to confirm the arbitration award may be made by First Class mail or by commercial express mail, to the attorney for the party or, if unrepresented, to the party at

the last known business address. If however, Depositor and/or FlexSAFE Beneficiary refuse to submit to arbitration, the matter shall not be submitted to arbitration and IMIPM may submit the matter to any court of competent jurisdiction. Unless adjudged otherwise, any costs of arbitration incurred by IMIPM, including reasonable attorney's fees and costs, shall be divided equally and paid by Depositor and FlexSAFE Beneficiary.

8.5    Controlling Law. This Agreement is to be governed and construed in accordance with the laws of the State of California, without regard to its conflict of law provisions.

8.6    Notice of Requested Order. If any party intends to obtain an order from the arbitrator or any court of competent jurisdiction, which may direct IMIPM to take, or refrain from taking any action, that party shall:

    a.    Give IMIPM at least five (5) business days prior notice of the hearing;

    b.    Include in any such order that, as a precondition to IMIPM's obligation, IMIPM be
paid

        in full for any past due fees and be paid for the reasonable value of the services to be rendered pursuant to such order; and

    c.    Ensure that IMIPM not be required to deliver the original (as opposed to a copy) of the Deposit Materials if IMIPM may need to retain the original in its possession to fulfill any of its other duties.

## ARTICLE 9 -- GENERAL PROVISIONS

9.1    Entire Agreement. This Agreement, which includes Exhibits described herein, embodies the entire understanding between the parties with respect to its subject matter and supersedes all previous communications, representations or understandings, either oral or written. IMIPM is not a party to the License Agreement between Depositor and FlexSAFE Beneficiary and has no knowledge of any of the terms or provisions of any such License Agreement. IMIPM's only obligations to Depositor or FlexSAFE Beneficiary are as set forth in this Agreement. No amendment or modification of this Agreement shall be valid or binding unless signed by both parties hereto, except Exhibit T need not be signed by IMIPM and Exhibit A need not be signed by either party.

9.2    Notices. All notices sent pursuant to Articles 5 and 6 and any Deposit Materials shall be delivered by commercial express mail or sent by certified mail, return receipt requested. All other correspondence including invoices, payments, documents and communications shall be sent First Class U.S. mail and given to the parties at the addresses specified in the attached Exhibit A. It shall be the responsibility of the parties to notify each other as provided in this Section in the event of a change of physical address or e-mail address. The parties shall have the right to rely on the last known address of the other parties. Any correctly addressed notice or last known address of the other parties that is relied on herein that is refused, unclaimed, or undeliverable because of an act or omission of the party to be notified as provided herein shall be deemed effective as of the first date that said notice was refused, unclaimed, or deemed undeliverable by the postal authorities by mail, through messenger or commercial express delivery services.

www.ironmountain.com                        F03v1

9.3    Severability.  In the event any provision of this Agreement is found to be invalid or unenforceable, the parties agree that unless it materially affects the entire intent and purpose of this Agreement, such invalidity or unenforceability shall affect neither the validity of this Agreement nor the remaining provisions herein, and the provision in question shall be deemed to be replaced with a valid and enforceable provision most closely reflecting the intent and purpose of the original provision.

9.4    Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties.  However, IMIPM shall have no obligation in performing this Agreement to recognize any successor or assign of Depositor unless IMIPM receives clear, authoritative and conclusive written evidence of the change of parties.

9.5    Waiver.  Any term of this Agreement may be waived by the party entitled to the benefits thereof, provided that any such waiver must be in writing and signed by the party against whom the enforcement of the waiver is sought.  No waiver of any condition, or breach of any provision of this Agreement, in any one or more instances, shall be deemed to be a further or continuing waiver of such condition or breach.  Delay or failure to exercise any right or remedy shall not be deemed the waiver of that right or remedy.

9.6    Regulations.  Depositor is responsible for and warrants compliance with all applicable laws, rules and regulations, including but not limited to customs laws, import, export, and re-export laws and government regulations of any country from or to which the Deposit Materials may be delivered in accordance with the provisions of this Agreement.

9.7    Attorney's Fees.  In any litigation or other proceeding by which one party either seeks to enforce its rights under this Agreement (whether in contract, tort, or both) or seeks declaration of any rights or obligations under this Agreement (whether in contract, tort, or both), the prevailing party who has proven in court by court decree, judgment or arbitrator's decision that the other party has materially breached its representation and/or warranty under this Agreement shall be awarded reasonable attorneys' fees, together with any costs and expenses, to resolve the dispute and to enforce final judgement.

9.8    No Third Party Rights.  This Agreement is made solely for the benefit of the Depositor and any enrolled FlexSAFE Beneficiaries to this Agreement and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Agreement unless otherwise agreed to by all the parties hereto.

9.9    Authority to Sign.  Each of the Parties herein represents and warrants that the execution, delivery, and performance of this Agreement has been duly authorized and signed by a person who meets statutory or other binding approval to sign on behalf of its business organization as named in this Agreement.

9.10    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

Depositor _____

Iron　Mountain　Intellectual　Property
Management, Inc.

By: _____

By: _____

Name:_____

Name:_____

Title:_____

Title:_____

Date:_____

Date:_____

**EXHIBIT A**

## DESIGNATED CONTACT

Deposit Account Number _____

| | |
|---|---|
| **Notices, deposit material returns and communications to <u>Depositor</u> should be addressed to:** | **Invoices to <u>Depositor</u> should be addressed to:** |

Company Name:_____
Address:_____

     _____

     _____

Designated Contact:_____

Telephone:_____
Facsimile:_____
E-mail:_____

Contact: _____

P.O.#, if required:_____

Requests from Depositor to change the designated contact should be given in writing by the designated contact or an authorized employee.

**Agreements, Deposit Materials and notices to IMIPM should be addressed to: (select location)**

**All invoice fee remittances to IMIPM should be addressed to:**

❑ Attn: Client Services
2100 Norcross Parkway, Suite 150
Norcross, GA 30071
Telephone: 770-239-9200
Facsimile: 770-239-9201
E-mail: ipm-clientservices@ironmountain.com

Iron Mountain Intellectual Property Management, Inc.
PO Box 27131
New York, NY 10087-7131

Date:_____

EXHIBIT B

## DESCRIPTION OF DEPOSIT MATERIALS

Depositor Company Name _____

Deposit Account Number _____

Product Name _____ Version _____
*(Product Name will appear as Exhibit B Name on Account History report)*

### DEPOSIT MATERIAL DESCRIPTION:

| Quantity | Media Type & Size | Label Description of Each Separate Item |
|---|---|---|
| _____ | Disk 3.5" or ____ | |
| _____ | DAT tape ____mm | |
| _____ | CD-ROM | |
| _____ | Data cartridge tape ____ | |
| _____ | TK 70 or ____ tape | |
| _____ | Magnetic tape ____ | |
| _____ | Documentation | |
| _____ | Other _____ | |

### PRODUCT DESCRIPTION:
Environment _____

### DEPOSIT MATERIAL INFORMATION:
Is the media or are any of the files encrypted?  Yes / No   If yes, please include any passwords
and the decryption tools.
Encryption tool name_____ Version _____
Hardware required_____
Software required _____
Other required information_____

I certify for **Depositor** that the above described     **IMIPM** has visually inspected and accepted
the
Deposit Materials have been transmitted to IMIPM: above materials *(any exceptions are noted above)*:

Signature:_____     Signature: _____
Print Name: _____     Print Name:_____
Date:_____     Date Accepted: _____
E-mail: _____     Exhibit B#: _____

**EXHIBIT T**

## FLEXSAFE BENEFICIARY ENROLLMENT

Deposit Account Number _____

Pursuant to the FlexSAFE Escrow Agreement ("Agreement"), Depositor hereby enrolls the following as a FlexSAFE Beneficiary:

Notices and communications to FlexSAFE Beneficiary should be addressed to:

Company Name:_____
Address:_____
_____
_____
Designated Contact:_____
Telephone:_____
Facsimile:_____
E-mail: _____

Invoices to FlexSAFE Beneficiary should be addressed to:

_____
_____
_____
_____
Contact: _____
_____
P.O.#, if required:_____

_____
Depositor

By: _____

Name:_____

Title:_____

Date:_____

## Exhibit 6

1. Cusack Meats
2. Ackerman & Cooke
3. Amazon or amazon.com
4. Balducci's
5. Bruss Company (Golden Trophy)
6. Buckhead Beef
7. Chicago Steak Company
8. Chicago Steaks (Lincoln Packing)
9. Conestoga Ranch
10. Conestoga Steaks
11. Consumers Packing Company
12. Dartagnan or dartagnan.com
13. Dean and Deluca or deananddeluca.com
14. Grand Gourmet Food or grandgourmetfood.com
15. Harry& David
16. Haute at Home (Goodheart)
17. Home Bistro
18. Kansas City Steaks
19. L & L Packing Company
20. Label's or lobels.com
21. Lobstergram Catalog or www.livelob.com
22. Maple Leaf Farms of mapleleaf.com
23. Niman Ranch or nimanranch.com
24. Nueske's
25. Omaha Steaks International
26. Pfaelzer Brothers
27. Prairie Grive Farms
28. Preferred Meats or preferedmeats.com
29. Prime Access
30. Prime Connection
31. Prince Meat Company
32. Ruprecht
33. Sayersbrook
34. Seabear
35. Smith & Wolensky
36. Snake River Farms or snakeriverfarms.com
37. Stock Yards Packing Company
38. The Honey Baked Ham Company
39. Vlcek's Gourmet Meats
40. Wyoming Buffalo Company
41. Yamabeef
42. McKensie
43. Rocke's Meat House
44. My Butcher.com
45. Uptown Prime
46. Superior Steaks
47. Pat's Prime Meats

Execution Copy

## FIRST AMENDMENT TO
## <u>WEBSITE DEVELOPMENT AND LICENSE AGREEMENT</u>

THIS AMENDMENT TO WEBSITE DEVELOPMENT AND LICENSE AGREEMENT ("**First Amendment**") is made as of the of 31st day of August, 2006, by and between Allen Brothers, Inc., an Illinois corporation (hereinafter referred to as "**Allen Brothers**"), and Prominent Consulting, LLC, a Delaware limited liability company (hereinafter referred to as "**Consultant**");

WHEREAS, Allen Brothers and Consultant entered into that certain Web Site Development and License Agreement dated as of the 11th day of January, 2005, (hereinafter referred to as the "**Agreement**");

WHEREAS, the parties agree that Consultant has generally performed its obligations in accordance with the Agreement up through and including the date of execution of this First Amendment;

WHEREAS, the parties agree that Consultant shall at the request of Allen Brothers pursuant to the terms of the New Web Site Agreement perform additional services for Allen Brothers to prepare a web site for the sale of seafood products, to be modeled on the New Web Site;

WHEREAS, the parties agree that in the event Allen Brothers wishes Consultant to create a seafood web site, Consultant shall be compensated for additional services performed by receiving commissions based on the sales through the seafood web site to be created in addition to the commissions based on the New Web Site;

WHEREAS, in accordance with Section 14, Paragraph C of the Agreement, the parties may vary, amend and modify the Agreement in writing pursuant to their signatures to such an amendment;

WHEREAS, this First Amendment to the Agreement is intended to be, and is, an amendment and modification of the Agreement. All terms and conditions of the Agreement not expressly modified or amended by this First Amendment shall remain in full force and effect; and

NOW, THEREFORE, in consideration of the mutual promises hereinafter stated, the sufficiency and mutuality of are hereby agreed upon and acknowledged by all parties, Allen Brothers and Consultant hereby agree that the Website Development and License Agreement shall be amended as follows:

1.    <u>**INCORPORATION OF RECITALS**</u>.    The foregoing recitals are hereby incorporated into and made a part hereof.

2.    <u>**EFFECTIVE DATE**</u>. This First Amendment shall be effective from January 1, 2006 through the termination of this Agreement. The Effective Date of the Agreement shall remain January 11, 2005.

1



EXHIBIT

2

Aug 31 06 03:09p    PROMINENT CAPITAL GROUP    312-896-1556        p.2

Execution Copy

3.    **SERVICES AND PERFORMANCE CRITERIA**.    Section 2 - Services and Fees, Paragraph A. — Services and Performance Criteria of the Agreement shall be amended in its entirety and replaced with the following:

"A.    **Services and Performance Criteria**.    Consultant agrees to provide web site development and related services ("Services) for Allen Brothers' as follows:

(1)    A Web Site to be known as www.allenbrothers.com as set forth in the B2C allenbrothers.com E-Commerce partnership web site design, development and marketing Proposal dated August 3, 2004 and amended December 31, 2004 and attached hereto as **Exhibit 1** (the "**Proposal**").

(2)    At no additional cost to Allen Brothers other than the Performance Fees paid for sales through such web site and the server, PDF conversion and other services reimbursement fees described in Section 2(C), at the election of Allen Brothers, a second web site displaying and offering for sale seafood to be known as [To Be Determined].com by Allen Brothers, Inc. (the "**Seafood Web Site**"). The Seafood Web Site shall be linked to allenbrothers.com. Consultant shall perform and provide the Seafood Web Site in the same manner as the New Web Site pursuant to the terms of this Agreement.    Each of the parties' respective rights and obligations described in this Agreement as pertaining to the New Web Site shall be completely and fully interpreted to also apply to the Seafood Web Site from and after January 1, 2006, provided, however, that Consultant shall be entitled to receive Performance Fees for sales on the New Web Site regardless of whether the Seafood Web Site is created or put into production.    Nothing in this Agreement shall preclude Allen Brothers from awarding the creation and maintenance of the Seafood Web Site to another consultant and in such event, Consultant acknowledges and agrees that Consultant shall not be required to perform any services or tasks related to the Seafood Web Site (other than including a link to the Seafood Web Site on the New Web Site), nor shall Consultant be entitled to any Performance Fees as a result of such Seafood Web Site during the term of this Agreement or any extension thereof, and all references to the Sea Food Web Site shall be deleted from this Agreement."

4.    **PERFORMANCE FEES**.    Section 2 - Services and Fees, Paragraph D. — Performance Fees of the Agreement shall be amended as follows to include the following provisions only with respect to sales made on dates including and after January 1, 2006:

" D.    **Performance Fees**.

(1)    Allen Brothers shall pay Consultant the following fees for providing maintenance and modification of the New Web Site and Seafood Web Site and marketing services (hereinafter "**Performance Fees**"):

2

Execution Copy

(a)    From January 1, 2006 forward through the remaining term of the Agreement, Consultant shall be paid:

(i)    an annual **"Base Commission"** which shall be calculated by taking one and three quarters percent (1.75%) (hereinafter the **"Base Percentage"**) multiplied by the amount of Net Sales (as such term is defined below) generated by the New Web Site and the Seafood Web Site between Zero ($0) and Two Million Two Hundred Thousand Dollars and no Cents ($2,200,000.00) during each such year of the three (3) year period (hereinafter the **"Base Amount"**); and

(ii)    an annual **"Bonus Commission"** which shall be calculated by multiplying the following Net Sales by the corresponding additional percentage (the **"Additional Percentage"**):

| Net Sales: | Add. Percentage: |
|---|---|
| For the year 2005: | Paid under original formula. |
| Between $2,200,000.00 and $10,550,000.00: | 5.0% |
| In excess of $10,550,001.00: | 2.5% |

during each such year of the remaining term of the Agreement (hereinafter depending on which Additional Percentage used, the **"Additional Amount"**);

(b)    **"Net Sales"** shall mean, as to any period during the Term of the Agreement, the amount of all gross sales processed through the New Web Site or the Seafood Web Site during such period, minus any credits to end users processed through the New Web Site or the Seafood Web Site for returns and recalls and excluding charges for shipping, handling or taxes. For purposes of net sales, a sale is considered to take place when it is initially processed through the New Web Site or the Seafood Web Site.

(2)    In the event the Agreement has not already been terminated, for purposes of calculating the Performance Fees for years 2005 and 2008 or later years of the Agreement, the following equation shall be used:

(a)    **Base Commission.**

(i)    **Year 2005**: Paid in full under the original terms of the Agreement.

(ii)    **Year 2008**: From January 1, 2008 to February 17, 2008, the Base Commission shall be paid for Net Sales from $0 to $169,905.00.

3

Aug 31 06 03:11p     PROMINENT CAPITAL GROUP     312-896-1556          p.4

Execution Copy

(See further **Exhibit 3(c)** for an example matrix of how to calculate the Base Commission for the first five (5) years of the Agreement.)

(iii)     **Years 2009 and later**: No Base Commission shall be payable during 2009 or later years of the Agreement.

**(b)     Bonus Commission.**

(i)     **Year 2005**:     The Bonus Commission shall be paid to Consultant and shall be calculated by taking any amount over and above the Base Amount and multiplying it by the 2005 Percentage of the Base.

(ii)     **Year 2008**:     The Bonus Commission shall be paid to Consultant as provided in Exhibit 3(d) below and shall be calculated by taking the Additional Percentage multiplied by any Additional Amount.

(See **Exhibit 3(d)** for an example matrix of the starting and ending sales amounts with the corresponding Base Percentage and Additional Percentage owed to Consultant.)

(iii)     The above Performance Fees shall be invoiced by Consultant to Allen Brothers on a quarterly basis, in arrears of such quarter.  Such quarterly invoicing shall clearly state the formula and equation used by Consultant to arrive at such Performance Fees. Allen Brothers shall pay such Performance Fees within thirty (30) days of the receipt of such invoice."

5.     **EXHIBIT 3(d)**.  Exhibit 3(d) of the Agreement shall be removed in its entirety and replaced with the following:

"**Exhibit 3(d)**.  The following matrix describes the Performance Fees to be paid:

2005   February 17, 2005 – December 31, 2005

| | | | |
|---|---|---|---|
| $0 | to | $2,030,094.00 | 1.75% |
| $2.030,095.00 | and | higher | 5.00% |

2006   Full Year

| | | | |
|---|---|---|---|
| $0 | to | $2,200,000.00 | 1.75% |
| $2,200,001.00 | to | $10,550,000.00 | 5.00% |
| $10,550,001.00 | and | higher | 2.50% |

2007   Full Year

| | | | |
|---|---|---|---|
| $0 | to | $2,200,000.00 | 1.75% |
| $2,200,001.00 | to | $10,550,000.00 | 5.00% |

4

Execution Copy

| | | | |
|---|---|---|---|
| $10,550,001.00 | and | higher | 2.50% |

**2008**  Paid for Net Sales occurring from Jan. 1st – Feb. 16th. Net Sales amounts are for total sales during Jan. 1st – Feb. 16th 2008

| | | | |
|---|---|---|---|
| $0 | to | $169,905.00 | 1.75% |
| $169,906.00 | to | $814,772.00 | 5.00% |
| $814,773.00 | and | higher | 2.50% |

**2008**  Paid for Net Sales occurring Feb. 17th & Thereafter. Net Sales amounts are for total sales during 2008

| | | | |
|---|---|---|---|
| $0 | to | $2,200,000.00 | 0% |
| $2,200,001.00 | to | $10,550,000.00 | 5.00% |
| $10,550,001.00 | and | higher | 2.50% |

**2009 and Later Years**

| | | | |
|---|---|---|---|
| $0 | to | $2,200,000.00 | 0% |
| $2,200,001.00 | to | $10,550,000.00 | 5.00% |
| $10,550,001.00 | and | higher | 2.50%" |

6.    **NOTICE OF TERMINATION BY ALLEN BROTHERS**.  Pursuant to Section 7. Term and Termination of Agreement, Subsection B. (1) (c), for its convenience, Allen Brothers may terminate this Agreement as of January 12, 2008 by delivering notice of such termination to Consultant.  The consequences of such termination shall be in accordance with the terms of the Agreement.

7.    **CONFLICT**.   To the extent that the provisions of the Agreement are inconsistent with the provisions of this First Amendment, the provisions of this First Amendment shall control.   In all other respects, the provisions of the Agreement shall remain in full force and effect, unmodified in any manner whatsoever.

8.    **NOTICE.**    The notice addresses for Consultant provided in Section 14(K) shall be replaced with the following:

If to Consultant:
    Prominent Consulting, LLC
    1483 Patriot Blvd.
    Glenview, Illinois 60026
    Attention: Kurt Seidensticker
    Facsimile: 312-896-1556
    E-mail: kurt@prominentconsulting.com

With a copy to:
    Sidley Austin LLP
    Attention: Jonathan C. Wagner
    One South Dearborn Street
    Chicago, IL 60603
    Facsimile: 312-853-7036
    E-mail: jwagner@sidley.com

5

Execution Copy

IN WITNESS WHEREOF, the parties have caused this First Amendment to be executed by their duly authorized representatives as of the date first written above.

**ALLEN BROTHERS:**                              **CONSULTANT:**

Allen Brothers, Inc., an Illinois                Prominent Consulting, LLC, a Delaware
corporation                                       limited liability company

By: _____              By: _____
    Bobby Hatoff, Chairman of the Board              Kurt Seidensticker, Authorized Officer
    and C.E.O.

6

## Certificate of Service

The undersigned, an attorney, hereby certifies that he caused a true and correct copy of the foregoing **Prominent Consulting, LLC's Counterclaims** to be served on:

Charles Leuin
Greenberg Traurig, LLP
77 West Wacker Drive
Chicago, Illinois 60601

Steven H. Hoeft
Peter M. Schutzel
McDermott Will & Emery LLP
227 West Monre Street
Chicago, Illinois 60606

Phillip A. Mullenix
617 West Fulton Street
Chicago, Illinois 60661

by hand delivery before 5:00 p.m. on November 8, 2007.

James V. Garvey