IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ALLEN BROTHERS, INC. | ) |
| Plaintiff, | ) Case No. 07 CH 11877 |
| v. | ) |
| SCOTT MARLAND, DEBBIE MARLAND, PROMINENT CONSULTING, LLC, KURT SEIDENSTICKER, and ECHOMOUNTAIN LLC, | ) |
| Defendants. | ) |

### DEFENDANT SCOTT MARLAND'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Scott Marland ("Marland"), by his attorneys, hereby submits his Answer, Affirmative Defenses, and Counterclaims to Plaintiff Allen Brothers, Inc. ("Allen Brothers" or "Plaintiff") Second Amended Complaint.

### GENERAL ALLEGATIONS

#### The Parties

1. Plaintiff, Allen Brothers, Inc. ("Allen Brothers") is an Illinois corporation with its principal place of business in Chicago, Illinois. Allen Brothers is a leading purveyor of fine meats and other fine foods to individual retail consumers through Allen Brothers' printed catalog and Internet Web site as well as to many of the nation's finest steakhouses, restaurants, hotels and country clubs.

**ANSWER:** Marland admits the allegations of this paragraph.

2. Defendant Scott Marland ("Marland") is an individual residing at 5150 W. Winnemac Avenue in Chicago, Illinois. Marland was the Vice President of Retail Operations for Allen Brothers from 1993 until he resigned unexpectedly and without prior notice on February 25, 2007.


EXHIBIT B

ANSWER: Marland admits that he resides at 5150 W. Winnemac Avenue in Chicago, Illinois. Marland further admits that he was employed by Plaintiff as Vice President from 1993 until his resignation on February 25, 2007. Marland lacks knowledge or information sufficient to form a belief as to whether Plaintiff expected his resignation, and therefore denies such allegations. Except as expressly admitted, Marland denies the allegations of this paragraph.

3. Defendant Debbie Marland is an individual residing at 5150 W. Winnemac Avenue in Chicago, Illinois. Debbie Marland is married to Marland and, as set forth below in greater detail, is herself a prior employee of Allen Brothers.

ANSWER: Marland admits the allegations of this paragraph.

4. Defendant Prominent Consulting, LLC ("Prominent") is a Delaware limited liability company doing business at 1483 Patriot Boulevard in Glenview, Illinois. Prominent, itself and through its wholly owned affiliates, provides a wide range of Information Technology and marketing services.

ANSWER: Marland lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph, and therefore denies these allegations.

5. Defendant Kurt Seidensticker ("Seidensticker") is an individual residing in Cook County, Illinois. Seidensticker, along with his wife, Laura Seidensticker, are the principal owners of Prominent and Seidensticker is a managing member of Prominent.

ANSWER: Marland lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph, and therefore denies these allegations.

6. Defendant echoMountain LLC ("echoMountain") is a Delaware limited liability company doing business at 1483 Patriot Boulevard in Glenview, Illinois. echoMountain is an affiliate of Prominent and, on information and belief, is principally or wholly owned by Seidensticker and his wife. On information and belief, Seidensticker is a managing member of echoMountain. echoMountain is a provider of information technology outsourcing solutions.

**ANSWER:** Marland lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph, and therefore denies these allegations.

### Jurisdiction and Venue

7. This Court has jurisdiction in this matter because the acts giving rise to this action occurred in Illinois and the several contracts between the parties was entered into in Illinois. Marland, an Illinois resident, Debbie Marland, an Illinois resident, Seidensticker, an Illinois resident, and Prominent, which conducts business in Illinois, all are subject to personal jurisdiction in this state pursuant to 735 ILCS § 5/2-209.

**ANSWER:** Marland admits that this Court has jurisdiction in this matter because the alleged acts giving rise to this action allegedly occurred in Illinois and the alleged contracts between Marland and Plaintiff were signed in Illinois, but denies that the acts attributed to Marland occurred. Further answering, Marland admits that both Marland and Debbie Marland are Illinois residents, and are therefore subject to personal jurisdiction. Marland lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph about Seidensticker and Prominent, and therefore denies those allegations.

8. Venue is proper in this Court pursuant to 735 ILCS § 5/2-101 because Marland and Allen Brothers and Prominent and Allen Brothers entered into agreements and conduct business in Cook County, Illinois and because other tortious acts alleged in the complaint were committed by all defendants in Illinois.

**ANSWER:** Marland admits that venue in the Court is proper because Marland and Plaintiff allegedly entered into agreements and conduct business in Cook County, Illinois. Marland denies that he committed any tortious acts, and therefore denies that venue in Cook County, Illinois is appropriate on that basis. Marland lacks knowledge or information sufficient to form a belief as the remaining allegations in this paragraph about Seidensticker and Prominent, and therefore denies those allegations.

## Factual Background - Claims Against Marland

I.  **Allen Brothers' Business**

9. Allen Brothers, a long-standing Chicago company, is one of the nation's largest suppliers of USDA Prime beef, the highest grade available, to fine restaurants and steakhouses both in Chicago and around the world, including Morton's, Del Frisco's, Gene & Georgetti, Lawry's, Nine and the Chicago Chop House.

**ANSWER:** Marland admits the allegations of this paragraph.

10. Allen Brothers also sells its fine meats and a wide variety of other exclusive food products directly to consumers throughout the United States, through a printed catalog and its Internet Web site. Allen Brothers' USDA Prime beef and other steaks are carefully selected, aged and hand-cut by expert butchers in the Company's state-of-the-art meat processing facility in Chicago, then shipped to catalog and online customers. Allen Brothers' numerous other food products also are sourced, selected, prepared and handled to meet the highest standards of excellence.

**ANSWER:** Marland admits the allegations of this paragraph.

II. **Allen Brothers' Catalog and Web Site**

11. Allen Brothers has more than 100,000 catalog and online customers who purchase its products for their personal use. At least 30% of these customers make their purchases from Allen Brothers' custom designed Web site, www.allenbrothers.com.

**ANSWER:** Marland admits that Plaintiff has customers who purchase its products from its catalog and web site, www.allenbrothers.com. Marland lacks knowledge or information sufficient to form a belief as to the exact number of customers, and the percentage of those customers that purchase Plaintiff's products from www.allenbrothers.com, and therefore denies such allegations. Except as expressly admitted, Marland denies the allegations of this paragraph.

12. Allen Brothers, directed by its president, Todd Hatoff, expends significant time, effort and money to develop, market and sell the products contained in its catalog and on its Web site. Todd Hatoff personally oversees all facets of Allen Brothers' extensive efforts directed to catalog and online sales, which includes finding and developing sources for the highest quality products and ingredients, creating, developing and producing Allen Brothers' exclusive line of prepared dishes conceived by Allen Brothers' team of award-

-4-

winning chefs, selecting the items to be sold, establishing appropriate prices, designing the catalog and Web site, photographing Allen Brothers' exclusive products, overseeing all advertising and marketing, monitoring trends in the dining industry and tracking sales.

**ANSWER:** Marland admits that Todd Hatoff ("Hatoff") is the president of Plaintiff. Marland further admits that Hatoff oversees the general operations of Plaintiff. Marland lacks knowledge or information sufficient to form a belief as to the time, effort and money Hatoff expends in his role as President of Plaintiff, and therefore denies those allegations. Except as expressly admitted, Marland denies the allegations of this paragraph.

### III. Allen Brothers' Exclusive Suppliers, Vendors and Consultants

13. Allen Brothers has also spent significant time and effort, primarily thorough its owners, and incurred substantial expense to foster strong partnering relationships with Allen Brothers' worldwide network of suppliers and vendors. Some of these suppliers and vendors have exclusive arrangements to provide gourmet food products or ingredients to Allen Brothers for sale to its commercial and retail customers. Todd Hatoff personally initiated relationships with and vetted a significant number of these suppliers and vendors to ensure that those suppliers and vendors can and do maintain the quality and consistency that Allen Brothers requires. Over a period of many years and through investment of significant effort and expense, Allen Brothers also has assembled a team of creative consultants, some of whom work exclusively with Allen Brothers, to design and market Allen Brothers' products.

**ANSWER:** Marland admits that Plaintiff has relationships with suppliers and vendors. Marland lacks knowledge or information sufficient to form a belief as to the amount of time, energy and expense used to secure and maintain these relationships, the exact terms of the relationships, or Hatoff's role in securing and maintaining these relationships, and therefore denies those allegations. Marland further admits that Plaintiff uses creative consultants, but lacks knowledge or information sufficient to form a belief regarding the investment of time, effort and expense to secure and maintain Plaintiff's relationship with its creative consultants. Except as expressly admitted, Marland denies the allegations in this paragraph.

### IV. Allen Brothers' Confidential and Highly Valuable Customer Database

14. Allen Brothers maintains an extensive proprietary database containing information about all customers who make purchases from Allen Brothers' catalog or Web site as well as many prospects likely to have interest in Allen Brothers' exclusive products (the "Allen Brothers Database"). The Allen Brothers Database contains detailed information on 350,000 of Allen Brothers' customers and prospects. The Allen Brothers Database is maintained on a limited-access computer system called the "Mail Order Manager" ("MOM").

**ANSWER:** Marland lacks knowledge or information sufficient to form a belief as to whether Plaintiff's database is proprietary, whether it contains all of Plaintiff's catalog and website customer, and the exact number of customers listed in the Allen Brothers Database, and therefore denies those allegation. Except as expressly denied, Marland admits the allegations of this paragraph.

15. Allen Brothers' products, including its Prime beef and other gourmet food products, are exclusive luxury items. Allen Brothers' catalog and online customers are often upscale, high-income consumers of luxury items who enjoy the "finer things in life." There are numerous celebrities and other well-known individuals about whom the Allen Brothers Database contains information. Allen Brothers also has many business customers who make gifts of Allen Brothers' products to their highly valued clients, customers and employees. As such, information regarding the individuals and businesses contained in the Allen Brothers Database — who are proven consumers of luxury products — is highly valuable.

**ANSWER:** Marland admits the first four sentences of this paragraph. Marland lacks knowledge or information sufficient to form a belief as to the "value" of the information in the Allen Brothers Database, and therefore denies this allegation. Except as expressly admitted, Marland denies the allegations of this paragraph.

16. Allen Brothers has employed reasonable efforts to keep the Allen Brothers Database confidential. The Allen Brothers Database and the MOM system are maintained on Allen Brothers' secure network and server. Only a limited number of management employees at Allen Brothers have access to the MOM system, the Allen Brothers Database and its customer information. All Allen Brothers' employees with access to the Allen Brothers Database or other Allen Brothers' confidential information are required to sign an employment agreement containing confidentiality provisions designed to protect all such information. The privacy statement appearing on Allen Brothers' Web site expressly assures

CHI99 4904764-2 072860 0011

its customers that their personal and purchase information is maintained in security and is protected by strict privacy guidelines.

**ANSWER:** Marland lacks knowledge or information sufficient to form a belief as to the allegations made in the first, second, third, and fourth sentences of this paragraph, and therefore denies these allegations. Marland admits the allegations made in the fifth sentence of this paragraph.

17. Allen Brothers derives a significant competitive advantage from having developed and by maintaining the Allen Brothers Database of its catalog and online customers and prospects. These customers and prospects are a highly sought-after demographic by Allen Brothers' competitors as well as numerous other marketers of luxury goods.

**ANSWER:** Marland lacks knowledge or information sufficient to form a belief as to the allegations made in this paragraph, and therefore denies these allegations.

### V. Marland's Employment with Allen Brothers

18. Marland joined Allen Brothers in 1993 as a salesman. At that time, Marland was 24 years old and had no experience in either the meat industry or with regard to direct marketing. Over the following years, as Marland learned from his employment at Allen Brothers about the meat industry and direct marketing, he was given a series of promotions, first becoming the Associate Director of Catalog Sales, then the Director of Catalog Sales and ultimately, in 2004, the Vice President of Retail Operations.

**ANSWER:** Marland admits that he joined Plaintiff in 1993 as a salesman. Marland further admits that when he joined Plaintiff, he was 24 years old and had no experience in the meat industry or with direct marketing. Marland admits that over the course of his employment he learned about the meat industry and direct markets and was promoted first to Director of the Catalog Division, and then in 1994 to Vice President in recognition of his performance and achievement. Except as expressly admitted, Marland denies the allegations of this paragraph.

-7-

19.     Throughout his series of positions, Marland's duties were primarily to assist Todd Hatoff in generating and processing catalog and online sales. Marland worked directly with Todd Hatoff and was given access to virtually all of the supplier and vendor contacts Todd Hatoff had established. In order to perform certain responsibilities of his job, Marland also was given access to the Allen Brothers Database.

**ANSWER:** Marland lacks knowledge or information sufficient to form a belief as to whether he was given access to "virtually all" of the supplier and vendor contacts established by Hatoff, and therefore denies this allegation. Except as expressly denied, Marland admits the allegations in this paragraph.

VI.   **Marland Enters Into an Employment Agreement and Phantom Stock Plan with Allen Brothers**

20.     In 2004, Allen Brothers sought to have Marland enter into an employment agreement in order to provide further protection for Allen Brothers' confidential information, including but not limited to the Allen Brothers Database and the significant amount of other confidential information to which Marland needed access to perform his job. In exchange for entering into an employment agreement, Marland was offered the right to participate in a phantom stock plan, in addition to significant other valuable consideration including an additional $10,000 bonus and a raise in salary of more than $10,000 annually.

**ANSWER:** Marland admits that in 2004 he signed the document attached as Exhibit 1 to the Second Amended Complaint. Marland lacks knowledge and information sufficient to form a belief as to why Plaintiff sought to enter an Employment Agreement with Marland, and therefore denies this allegation. Further, to the extent the allegations contained in this paragraph attempt to characterize the terms of Exhibit 1, Marland denies Plaintiff's characterization and refers the Court to the document for its true meaning and effect. Except as expressly admitted, Marland denies the allegations of this paragraph.

21.     On December 27, 2004, as a result of Allen Brothers' efforts, Marland entered into an Employment Agreement with Allen Brothers, a copy of which is attached hereto as **Exhibit 1** (the "Employment Agreement"). The Employment Agreement became effective on January 1, 2005.

ANSWER: Marland admits that he signed the document attached as Exhibit 1 to the Second Amended Complaint. To the extent paragraph 21 attempts to interpret the terms or meaning of Exhibit 1, Marland denies the Plaintiff's characterization to the extent that interpretation is different from the Exhibit 1. Except as expressly admitted, Marland denies the allegations of this paragraph.

22. A copy of the Allen Brothers Phantom Stock Plan entered into by Marland and provided as a part of the consideration for Marland's undertakings in the Employment Agreement is attached hereto as **Exhibit 2** (the "Phantom Stock Plan").

ANSWER: Marland admits that he signed the document that it is attached to the Second Amended Complaint as Exhibit 2. To the extent paragraph 22 attempts to interpret the terms or meaning of Exhibit 2, Marland denies the Plaintiff's characterization to the extent that interpretation is different from the Exhibit 2. Except as expressly admitted, Marland denies the allegations of this paragraph.

23. In the Employment Agreement, Marland acknowledged that "he has acquired Trade Secrets and other Confidential Information as a consequence of his employment with the Company." (Employment Ag., Ex. 1, § 7(a).)

ANSWER: Marland admits that he signed the document attached as Exhibit 1 to the Second Amended Complaint, and that paragraph 23 accurately quotes an excerpt from Exhibit 1. To the extent paragraph 23 attempts to interpret the terms or meaning of Exhibit 1, Marland denies the Plaintiff's characterization to the extent that interpretation is different from the Exhibit 1. Except as expressly admitted, Marland denies the allegations of this paragraph.

24. The Employment Agreement defines "Confidential Information" as:

> "Confidential Information" includes any information relating to (i) the business, conduct or operations of the Company or any of its respective clients, customers, consultants or licensees; (ii) any methods, ways of doing business, etc., used in the sale, use or marketing of the

company's products or services; (iii) the existence or betterment of, or possible new uses or applications for, any such products or services; (iv) any of the Company's product lines, customer lists, sales or dealer network, pricing and purchasing information or policies, non-public catalog information; (v) any inventions, products, machines, production processes, apparatus, molds, formulas, drawings, blueprints, photographs, slides, motion pictures, videotapes, computer software, information stored on the Company's computer or intranet, product specifications, trade secrets, price and discount lists, customers, customer lists, suppliers, supplier lists, personnel data, business and marketing plans, ideas or strategies, financial performance and projections and cost data; and (vi) the Company's purchasing arrangements and terms with suppliers, research and development, methods, practices, pricing to customers, pricing of materials, conditions of transactions with customers and suppliers, accounting and other systems, financial condition, marketing techniques or practices, merchandising techniques or practices or patents. "Confidential Information" further includes any and all information of whatever nature or kind which the employee has learned of, acquired or obtained knowledge of, conceived, developed, originated, discovered, invented, disclosed or otherwise become aware of during his employment provided that this sentence shall not apply to information within the public domain or generally known within the industry of the Company or entirely unrelated to the activities of the Company.

(*Id.*)

**ANSWER:** Marland admits that he signed the document attached as Exhibit 1 to the Second Amended Complaint, and that paragraph 24 accurately quotes an excerpt from Exhibit 1. To the extent paragraph 24 attempts to interpret the terms or meaning of Exhibit 1, Marland denies the Plaintiff's characterization to the extent that interpretation is different from Exhibit 1. Except as expressly admitted, Marland denies the allegations of this paragraph

25. The parties also agreed that any Confidential Information, as defined in the Employment Agreement, will be deemed a "Trade Secret" under the Illinois Trade Secrets Act, 765 ILCS § 1065/1 *et seq.* (*Id.*)

**ANSWER:** Marland admits that he signed the document attached as Exhibit 1 to the Second Amended Complaint. Except as expressly admitted, Marland denies the allegations of this paragraph.

- 10 -