117. On information and belief, Marland is utilizing or will utilize Allen Brothers' customer information, vendor contacts and sales history data in his efforts to obtain future employment in the retail food industry or otherwise utilize Allen Brothers' confidential information in his subsequent employment. Thus, it is inevitable Marland will disclose Allen Brothers' trade secrets in obtaining employment, and possibly in a new position with one of Allen Brothers' competitors.

**ANSWER:** Marland denies the allegations of this paragraph.

118. Allen Brothers will be irreparably injured by any use or disclosure of its trade secrets by Marland. Allen Brothers' damages from such misappropriation will be difficult to ascertain and/or calculate. Thus, pursuant to 765 ILCS § 1065/3, Allen Brothers is entitled to an injunction to prevent Marland from any actual or threatened misappropriation of its trade secrets.

**ANSWER:** Marland states that paragraph 118 sets forth a legal conclusion to which an answer is neither necessary nor appropriate. Further answering, Marland denies the allegations of this paragraph.

119. In addition, if Allen Brothers is able to quantify losses or unjust enrichment caused by Marland actual or threatened misappropriation of its trade secrets, then Allen Brothers may recover those damages pursuant to 765 ILCS § 1065/4.

**ANSWER:** Marland states that paragraph 119 sets forth a legal conclusion to which an answer is neither necessary nor appropriate. Further answering, Marland denies the allegations of this paragraph.

120. Marland's surreptitious misappropriation of Allen Brothers' trade secret was done willingly and maliciously, therefore, Allen Brothers is entitled to recover exemplary damages and attorneys' fees. *Id.*, §§ 1065/4(b), 1065/5.

**ANSWER:** Marland states that paragraph 120 sets forth a legal conclusion to which an answer is neither necessary nor appropriate. Further answering, Marland denies the allegations of this paragraph.

- 42 -

## COUNT V
### Injunctive Relief and Damages for Breach of Development Agreement
(Against Prominent)

121.  Allen Brothers repeats and realleges Paragraphs 1-89 herein.

**ANSWER:**  Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

122.  The Development Agreement is a valid and enforceable contract.

**ANSWER:**  As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

123.  Allen Brothers has performed all of its obligations to Prominent under the Development Agreement.

**ANSWER:**  As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

124.  Prominent has breached Section 13 of the Development Agreement by surreptitiously and intentionally intercepting, accessing, misappropriating and using for its own purposes various confidential information belonging to Allen Brothers, including but not limited to highly sensitive legal advice regarding strategy for Allen Brothers' claims against Marland, as well as information regarding Allen Brothers' market value and executive compensation. The information that Prominent accessed, intercepted and misused constitutes Confidential Information, as defined in Sections 5.A(2) and 13 of the Development Agreement.

**ANSWER:**  As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

125.  Prominent has breached Section 13 of the Development Agreement by disclosing to Debbie Marland Allen Brothers' Confidential Information (as defined therein) as

- 43 -

well as other confidential email communications between Allen Brothers and its counsel for the express purpose of thwarting Allen Brothers' claims against Marland in this lawsuit and by seeking to induce Marland and Debbie Marland to spoliate evidence relevant to this matter.

**ANSWER:** As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

126. Prominent has breached Section 2 of the Development Agreement through its failure to perform Marketing Services as required under the terms of the Development Agreement and the course of performance of the parties over the term of the Development Agreement.

**ANSWER:** As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

127. Prominent has breached Section 2 of the Development Agreement through its intentional and wrongful misuse of the funds provided to Prominent for its performance of the Optimization Services.

**ANSWER:** As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

128. Prominent's continued and further breach of the Development Agreement has caused and will in the future cause Allen Brothers to suffer irreparable harm, including lost business, erosion of customer and vendor relationships and the expense and business disruption of creating and implementing a new Web site for Allen Brothers.

**ANSWER:** As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

129. The Development Agreement expressly provides that if Prominent violates its confidentiality provisions, monetary damages will be difficult to ascertain and will not afford

- 44 -

an adequate remedy to Allen Brothers (Develop. Ag., Ex. 3, § 13.F.). It also provides that Allen Brothers is entitled to injunctive relief in the case of Prominent's breach. (*Id.*)

**ANSWER:** As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

130. Allen Brothers has suffered damages as a direct and proximate result of Prominent's prior breaches of the Development Agreement in an amount to be proved at trial.

**ANSWER:** As the allegations of Count V are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

## COUNT VI
### Breach of Fiduciary Duty
### (Against Prominent)

131. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

**ANSWER:** Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

132. As set forth in greater detail herein, Prominent came to serve as the functional equivalent of Allen Brothers' Information Technology Department. Based on the facts and circumstances and in light of the special relationship that existed between Prominent and Allen Brothers, and that was solicited and fostered by Prominent, Allen Brothers placed its trust in Prominent such that Prominent gained superiority and influence over Allen Brothers with respect to matters of technology.

**ANSWER:** As the allegations of Count VI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

133. As such, Prominent owed Allen Brothers a fiduciary duty in connection with Prominent's performance of services in connection with Allen Brothers' technology and had the duty to act solely in the best interest of Allen Brothers in performing all such services.

- 45 -

**ANSWER:** As the allegations of Count VI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

134. Prominent breached its fiduciary duties to Allen Brothers through the misconduct described herein.

**ANSWER:** As the allegations of Count VI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

135. As a result of Prominent's breaches of its fiduciary duties, Allen Brothers has been damaged in an amount to be proved at trial.

**ANSWER:** As the allegations of Count VI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

## COUNT VII
### Violation of Illinois Trade Secrets Act (765 ILCS § 1065/1 *et seq.*)
### (Against Prominent and Seidensticker)

136. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

**ANSWER:** Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

137. The information regarding Allen Brothers' customers and internal operations to which Prominent and Seidensticker had access in order to perform their responsibilities to Allen Brothers under the Development Agreement and otherwise constitutes trade secrets as defined in 765 ILCS § 1065/2(d) (the "Trade Secrets Act"). For example, information regarding strategy devised by Allen Brothers' counsel to maximize the extent of recovery in the Marland matter constitutes trade secrets under the Trade Secrets Act. Such information is sufficiently secret in order to derive economic value from not being generally known to others who could get economic value from its disclosure or use. Allen Brothers developed this information at significant expense and has taken reasonable efforts to maintain its secrecy. This confidential information has significant value and is not known or available to the public.

- 46 -

Such information certainly was not intended to be made available to Marland when Allen Brothers was preparing and pursuing its claims against him.

**ANSWER:** As the allegations of Count VII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

138. In the Development Agreement, Prominent acknowledged that this information was confidential and proprietary to Allen Brothers (Development Ag., **Ex. 3,** § 13.). Thus, this information also constitutes a trade secret under the Illinois Trade Secrets Act. 765 ILCS 1065/3(a).

**ANSWER:** As the allegations of Count VII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

139. Prominent and Seidensticker acquired access to Allen Brothers' trade secrets while performing Services for Allen Brothers under the terms of the Development Agreement. Prominent and Seidensticker acted unconscionably when they accessed and misused Allen Brothers' trade secrets for purposes of interfering with Allen Brothers' claims against Marland.

**ANSWER:** As the allegations of Count VII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

140. Prominent and Seidensticker utilized and disclosed these trade secrets to Debbie Marland in the April Seidensticker Email and the May Seidensticker Emails in an attempt to thwart Allen Brothers' attempt to discover the full extent of Marland's breaches of his Employment Agreement.

**ANSWER:** As the allegations of Count VII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

141. Allen Brothers will be irreparably injured by any further use or disclosure of its trade secrets by Prominent or Seidensticker. Allen Brothers' damages from such misappropriation will be difficult to ascertain and/or calculate. Thus, pursuant to 765 ILCS § 1065/3, Allen Brothers is entitled to an injunction to prevent Prominent and Seidensticker from any actual or threatened misappropriation of its trade secrets.

**ANSWER:** As the allegations of Count VII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

142. In addition, if Allen Brothers is able to quantify losses or unjust enrichment caused by Prominent's or Seidensticker's actual or threatened misappropriation of its trade secrets, then Allen Brothers may recover those damages pursuant to 765 ILCS § 1065/4.

**ANSWER:** As the allegations of Count VII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

143. Prominent's and Seidensticker's surreptitious misappropriation of Allen Brothers' trade secrets was done willingly and maliciously, therefore, Allen Brothers is entitled to recover exemplary damages and attorneys' fees. *Id.*, §§ 1065/4(b), 1065/5.

**ANSWER:** As the allegations of Count VII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

## COUNT VIII
### Tortious Interference with Contract
**(Against Prominent, Seidensticker and Debbie Marland)**

144. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

**ANSWER:** Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

145. Marland's Employment Agreement constitutes a valid and enforceable contract between Allen Brothers and Marland. Under the Employment Agreement, Marland had

- 48 -

CHI99 4904764-2 072560 0011

duties and executory obligations to Allen Brothers even following the termination of his employment.

**ANSWER:** As the allegations of Count VIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

146. Defendants Prominent, Seidensticker and Debbie Marland were aware of the existence of the Employment Agreement and the restrictions and obligations that it imposed upon Marland.

**ANSWER:** As the allegations of Count VIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

147. With such knowledge, and without justification or privilege, defendants Prominent, Seidensticker and Debbie Marland have wrongfully interfered with Marland's performance of his duties and obligations under the Employment Agreement as well as with Allen Brothers' ability to discover and obtain remedy for Marland's prior breaches of the Employment Agreement.

**ANSWER:** As the allegations of Count VIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

148. As a direct and proximate result of tortious interference by defendants Prominent, Seidensticker and Debbie Marland, Allen Brothers has suffered and will continue to suffer damages.

**ANSWER:** As the allegations of Count VIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

## COUNT IX
### Civil Conspiracy
### (Against Marland, Debbie Marland, Prominent Consulting, LLC and Kurt Seidensticker)

[Subject to Defendants' Motion to Dismiss]

149. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

**ANSWER:** Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

150. Upon information and belief, Defendants herein agreed to participate in a scheme to thwart Allen Brothers' investigation of Marland's misappropriation of Allen Brothers' Confidential Information and to spoliate evidence.

**ANSWER:** Marland joins the Prominent Defendants' Motion to Dismiss Count IX of the Second Amended Complaint, and therefore neither admits nor denies the allegations of this paragraph.

151. In furtherance of that agreement, Prominent and Seidensticker, improperly obtained Allen Brothers' Confidential Information and surreptitiously conveyed that information to Marland and Debbie Marland.

**ANSWER:** Marland joins the Prominent Defendants' Motion to Dismiss Count IX of the Second Amended Complaint, and therefore neither admits nor denies the allegations of this paragraph.

152. That overt act was done in furtherance of and pursuant to the common scheme devised among the Defendants.

**ANSWER:** Marland joins the Prominent Defendants' Motion to Dismiss Count IX of the Second Amended Complaint, and therefore neither admits nor denies the allegations of this paragraph.

153. As a result of Defendants' misconduct, Allen Brothers has suffered and continues to suffer substantial damages in an amount to be determined at trial.

ANSWER: Marland joins the Prominent Defendants' Motion to Dismiss Count IX of the Second Amended Complaint, and therefore neither admits nor denies the allegations of this paragraph.

## COUNT X
### Unjust Enrichment
### (Against Prominent)

154. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

ANSWER: Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

155. In early 2007, Allen Brothers was in negotiations with Prominent to develop the iChieve Technology through the iChieve Venture.

ANSWER: As the allegations of Count X are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

156. In furtherance of the iChieve Venture and with the expectation that it would be consummated in writing, Allen Brothers advanced to Prominent $178,559.86 for the sole and exclusive purpose of developing the iChieve Technology for Allen Brothers' benefit.

ANSWER: As the allegations of Count X are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

157. There was no written agreement executed related to the iChieve Venture of iChieve Technology. Allen Brothers has not received any service, products, remuneration or reimbursement for the amounts that it advanced to Prominent for development of the iChieve Technology.

ANSWER: As the allegations of Count X are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

158. At the time that Seidensticker and Prominent solicited and accepted the amounts advanced to Prominent for development of the iChieve Technology, Seidensticker and Prominent were aware of their intentional misconduct and unethical business practices alleged herein, including but not limited to their monitoring and misuse of Allen Brothers Confidential Information contained in emails to and from Allen Brothers.

ANSWER: As the allegations of Count X are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

159. Prominent has unjustly retained the benefit of the amount advance by Allen Brothers for development of the iChieve Technology.

ANSWER: As the allegations of Count X are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

160. Prominent's retention of amounts paid by Allen Brothers in contemplation of development of the iChieve Technology for the benefit of Allen Brothers violates the fundamental principles of justice, equity and good conscience. Justice and equity dictate that Prominent should return these amounts to Allen Brothers.

ANSWER: As the allegations of Count X are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

## COUNT XI
### Spoliation of Evidence
(Against Debbie Marland, Prominent Consulting, LLC and Kurt Seidensticker)

161. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

- 52 -

ANSWER: Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

162. Pursuant to the Employment Agreement, Marland had a duty to maintain all of Allen Brothers Confidential Information and to return it to Allen Brothers after his resignation (Employment Ag., Ex. 1, § 7.).

ANSWER: As the allegations of Count XI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

163. Pursuant to the Development Agreement, Prominent also had a duty to maintain Allen Brothers' confidential and proprietary information (Develop. Ag., Ex. 3, §§ 5.A(2) and 13).

ANSWER: As the allegations of Count XI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

164. Defendants have engaged in spoliation of evidence through their discussion of means by which Marland could destroy and/or obscure confidential information belonging to Allen Brothers wrongfully in Marland's possession and, on information and belief, the implementation of those means.

ANSWER: As the allegations of Count XI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

165. As a direct and proximate result of Defendants' spoliation of evidence, Allen Brothers has been damaged.

ANSWER: As the allegations of Count XI are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

- 53 -

CHI99 4904764-2.072860.0011

166. The damage to Allen Brothers incurred as a result of Defendants' spoliation of evidence in this matter will be more specifically proven at trial, but will include the costs of its forensic analysis of Marland's personal and business computers, the evidence against Marland that has been lost as a result of the spoliation and Allen Brothers' attorneys' fees.

**ANSWER:** Marland denies the allegations of this paragraph.

### COUNT XII
### Fraud
### (Against Kurt Seidensticker and Prominent Consulting, LLC)

167. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

**ANSWER:** Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

168. Prominent and Seidensticker falsely represented to Todd Hatoff that Prominent was utilizing and would continue to utilize Allen Brothers' Optimization Services budget solely for the benefit of Allen Brothers, including for the purpose of purchasing Internet advertising on behalf of Allen Brothers.

**ANSWER:** As the allegations of Count XII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

169. Prominent and Seidensticker knew those representations were false and made such false representations for the purpose of inducing Allen Brothers to fund the Optimization Services budget.

**ANSWER:** As the allegations of Count XII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

170. Allen Brothers relied on Prominent's and Seidensticker's false representations as to material facts by funding and continuing to fund the Optimization Services budget.

CH199 4904764-2.072860.0011

ANSWER: As the allegations of Count XII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

171. Prominent and Seidensticker intentionally and wrongfully diverted funds authorized to be used solely in Internet advertising campaigns on behalf of Allen Brothers.

ANSWER: As the allegations of Count XII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

172. Instead of using those funds to benefit Allen Brothers, Seidensticker and Prominent used them for the benefit of another of Seidensticker's entities and an affiliate of Prominent, echoMountain.

ANSWER: As the allegations of Count XII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

173. As a direct and proximate result of Defendants' false statements of material fact and Allen Brothers' reasonable reliance thereupon, Allen Brothers has been damaged.

ANSWER: As the allegations of Count XII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

## COUNT XIII
### Conversion
**(Against Kurt Seidensticker, Prominent Consulting, LLC and echoMountain, LLC)**

174. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

ANSWER: Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

-55-

CHI99 4904764-2.072860.0011