175. Prominent, Seidensticker and, on information and belief, echoMountain intentionally and wrongfully diverted funds authorized to be used solely in Internet advertising campaigns on behalf of Allen Brothers.

**ANSWER:** As the allegations of Count XIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

176. Instead of using those funds to benefit Allen Brothers, Seidensticker and Prominent used them for the benefit of another of Seidensticker's entities and an affiliate of Prominent, echoMountain.

**ANSWER:** As the allegations of Count XIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

177. At all relevant times, the funds budgeted for use in Internet advertising campaigns on behalf of Allen Brothers were owned exclusively by Allen Brothers.

**ANSWER:** As the allegations of Count XIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

178. Seidensticker, Prominent and, on information and belief, echoMountain wrongfully and without authorization assumed dominion, control and/or ownership over Allen Brothers' funds by using those funds to purchase Internet advertising on behalf of echoMountain.

**ANSWER:** As the allegations of Count XIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

179. As a direct and proximate result of Defendants' conversion of the funds at issue, Allen Brothers has been damaged.

ANSWER: As the allegations of Count XIII are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

### COUNT XIV
### Unjust Enrichment
### (Against echoMountain LLC)

180. Allen Brothers repeats and realleges Paragraphs 1-89 herein.

ANSWER: Marland repeats his answers to paragraphs 1 through 89 as if fully set forth herein.

181. Prominent, Seidensticker and, on information and belief, echoMountain intentionally and wrongfully diverted funds authorized to be used solely in Internet advertising campaigns on behalf of Allen Brothers.

ANSWER: As the allegations of Count XIV are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

182. Instead of using those funds to benefit Allen Brothers, Seidensticker and Prominent used them for the benefit of another of Seidensticker's entities and an affiliate of Prominent, echoMountain.

ANSWER: As the allegations of Count XIV are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

183. echoMountain has unjustly retained the benefits of the amounts diverted from Allen Brothers' Internet advertising budgets and instead used to benefit echoMountain.

ANSWER: As the allegations of Count XIV are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

184.  echoMountain's retention of those benefits violates the fundamental principles of justice, equity and good conscience. Justice and equity dictate that echoMountain should pay to Allen Brothers the amounts that were used to benefit echoMountain.

**ANSWER:** As the allegations of Count XIV are not directed at Marland, no answer is required. To the extent that any allegations in this paragraph are construed to include Marland, those allegations are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

Plaintiff's claims fail because Plaintiff fails to state a claim against Marland.

### SECOND AFFIRMATIVE DEFENSE
(Failure to Mitigate Damages)

Plaintiff has failed to mitigate its damages, if any, and any recovery awarded should be reduced accordingly.

### THIRD AFFIRMATIVE DEFENSE
(Lack of Consideration)

Plaintiff's claims fail for lack of consideration. In support of this defense, Marland alleges:

1. Exhibit 1 to the Amended Complaint states that the Phantom Stock Plan serves as the consideration for the restrictive covenants in Exhibit 1. (Employment Agreement, p. 1, attached to Allen Brothers' Amended Complaint as Exhibit 1).

2. Paragraph 5.3 of the Phantom Stock Plan states:

In the event that Employee's employment is termination on account of his voluntary termination of employment prior to his attainment of age 60 or if his employment is terminated by Employer without Cause before his attainment of

- 58 -

CHI99 4904764-3.073860.0011

> age 60, payment of benefits shall commence not later than the five year anniversary of the date of his termination of employment. In the case of Employee's voluntary termination of employment prior to age 60, the amount of his benefit will be subject to vesting in accordance with Section 5.4. In the case of Employee's termination on account of death, Disability, Normal Retirement, termination by Employer without Cause prior to his attainment of age 60, or voluntary termination by Employee prior to his attainment of age sixty (60), **Employee's Account will be distributed over five (5) years in twenty (20) equal quarterly installations.**"

(Phantom Stock Plan § 5.3, attached to Allen Brothers' Amended Complaint as Exhibit 2) (emphasis added).

3. Marland's resignation from Allen Brothers occurred prior to his attainment of age 60.

4. Paragraph 5.7 of the Phantom Stock Plan, "COMPETITION WITH EMPLOYER RESULTS IN FORFEITURE," states:

> Employee shall not, while he is employed by Employer, **or if his employment with Employer has terminated, for as long as any portion of his Account remains undistributed,** engage in any business or practice, either as a shareholder or owner or partner, director, officer, employee, consultant, or otherwise, in competition with the Employer, or otherwise take any actions prejudicial to the Interests of Employer. If the Administrator determines that Employee has violated this provision or in the event that the Employee breaches the Employment Agreement, the Board may declare that the Employee's rights are terminated hereunder and his Account, or the remaining undistributed portion thereof, shall be declared a Forfeiture.

(Phantom Stock Plan § 5.7, attached to Allen Brothers' Amended Complaint as Exhibit 2) (emphasis added).

5. Under the terms of Sections 5.3 and 5.7 of the Phantom Stock Plan, Marland is restrained from, in the opinion of Allen Brothers, competing or otherwise taking "actions prejudicial to the Interests" of Allen Brothers for ten years from the date of Marland's

-59-

resignation from Allen Brothers. The Phantom Stock Plan is truly a phantom plan, whereby Allen Brothers, in its sole discretion, can determine whether an employee has taken "actions prejudicial" to Allen Brothers at any point during a ten-year period and revoke any interest the employee has accrued.

6. The restrictions placed on Marland by the Phantom Stock Plan are unreasonable restraints on trade and against public policy in Illinois. The Phantom Stock Plan is therefore invalid and unenforceable.

7. Because the Phantom Stock Plan is invalid and unenforceable, no consideration exists for Marland's agreement to enter Exhibit 1 and all of Allen Brothers claims against Marland fail.

## FOURTH AFFIRMATIVE DEFENSE
(Waiver/Selective Enforcement)

Marland alleges that Plaintiff has waived any right to enforce any non-compete provisions contained in the Employment Agreement by failing to enforce similar covenants against other former employees under similar circumstances. In support of this defense, Marland alleges:

1. On information and belief, former Allen Brothers employee, Fred Marschke, had signed a document with Allen Brothers that was substantially similar, if not identical to, the Exhibit 1, including but not limited to the non-compete and non-disclosure provisions of the Exhibit 1.

2. Marschke worked in Allen Brothers' offices in Chicago, and was responsible for the procurement and pricing of many of Allen Brothers' products. On information and

- 60 -

belief, in or about the early spring of 2006, Marschke and Robert Hatoff had a disagreement, which led to a verbal and physical confrontation culminating in Robert Hatoff shoving Marschke. Marschke left the Allen Brothers office that day and never returned.

3. On information and belief, Marschke was terminated from Allen Brothers the day after his physical confrontation with Robert Hatoff.

4. On information and belief, within eighteen months, Marschke began working for Allen Brothers' competitor, Sysco. On information and belief, "Sysco competitor, meat company, subsidiary or operation" was listed on Marschke's employment agreement with Allen Brothers, as a competitor for whom Marschke could work not for a period of eighteen (18) months after his departure from Allen Brother. If Sysco is not specifically listed on Marschke's employment agreement as a competitor, then Marschke's position with Sysco was one that "is competitive with any business activity conducted by [Allen Brothers]." (Employment Agreement, § 10(f), attached to Allen Brothers' Amended Complaint as Exhibit 1).

5. On information and belief, despite Marschke's employment with Sysco, and Allen Brothers knowledge thereof, Allen Brothers has not brought a suit against Marschke or sought to enforce Marschke's employment agreement in any way.

6. Dennis M. Stiffler was a Vice President of Allen Brothers until his termination in or about December 2002. On information and belief, Stiffler had an employment agreement with Allen Brothers that was substantially similar, if not identical to, Exhibit 1, including but not limited to the non-compete and non-disclosure provisions of Exhibit 1.

7.  On information and belief, within eighteen months of his termination Stiffler began working for Allen Brothers' competitor, Coleman Natural Foods LLC. Coleman Natural Foods offers natural, organic, antibiotic-free, vegetarian-fed beef, chicken, pork, lamb, processed meats, and ready-to-eat and frozen convenience meat products. Coleman Natural Foods' meat products are available to food retailers and foodservice operations throughout the US.

8.  On information and belief, under the terms of Stiffler's employment agreement with Allen Brothers, Coleman Natural Foods LLC is competitor of Allen Brothers, for whom Stiffler was prohibited from working for a period of eighteen months from the date of his termination from Allen Brothers.

9.  On information and belief, despite Stiffler's employment with Coleman Natural Foods, and Allen Brothers' knowledge thereof, Allen Brothers has not brought a suit against Stiffler or sought to enforce Stiffler's employment agreement in any way.

10. Allen Brothers has waived any right to enforce any non-compete provisions contained in Exhibit 1 to the Amended Complaint because Allen Brothers has failed to enforce similar covenants against other former employees under the same or substantially similar circumstances.

### FIFTH AFFIRMATIVE DEFENSE
(Material Breach)

Marland alleges that Plaintiff materially breached Exhibit 1 by failing to perform all of its obligations under the terms of the Employment Agreement, and that such a breach bars any recovery. In support of this defense, Marland alleges:

11. The Employment Agreement between Marland and Allen Brothers states:

> NOW, THEREFORE, in consideration of the premises contained in this Agreement, as well as Employee's continued employment by the Company pursuant to the terms and conditions contained herein, the Phantom Stock Plan simultaneously executed by the parties hereto, his promotion to the office of Vice President, **the supplement to his year-end bonus of $10,000, the increase in his annual compensation by $10,400** and other goods and valuable consideration, the receipt and sufficiency of which are hereby acknowledged...

(Employment Agreement, p. 2, attached to Allen Brothers' Amended Complaint as Exhibit 1) (emphasis added).

12. Prior to the effective date of Exhibit 1 to the Amended Complaint, Marland's year-end bonus for 2004 was $30,000. Under the terms of Exhibit 1, Allen Brothers was obligated to increase Marland's year-end bonus by $10,000 annually. Allen Brothers was therefore obligated to pay Marland $40,000 as 2005 year end bonus, and $50,000 as a 2006 year-end bonus.

13. Under the terms of Exhibit 1, Allen Brothers was obligated to increase Scott Marland's annual compensation by $10,400 annually.

14. Up to an including the date of Marland's resignation, Marland performed all of his obligations under the terms of Exhibit 1.

15. Allen Brothers paid Marland $35,000 for his 2005 year-end bonus.

16. Allen Brothers paid Marland $20,000 for his 2006 year-end bonus.

17. Allen Brothers has failed to pay Marland the remaining $5,000 balance of his 2005 year-end bonus, and the remaining $30,000 of his 2006 year-end bonus.

CH199 490-1764-2 072860 0011

18. Allen Brothers did not increase Marland's 2005 annual compensation by $10,400 in 2006.

19. Allen Brothers did not increase Marland's 2006 annual compensation by $10,400 in 2007.

20. Allen Brothers has materially breached Exhibit 1 by refusing to pay the outstanding balances of Scott Marland's 2005 and 2006 year-end bonuses and 2006 and 2007 annual compensation.

21. Allen Brothers materially breached Exhibit 1 by failing to perform all of its obligations under the terms of Exhibit 1. Such a breach bars any recovery by Allen Brothers under Exhibit 1.

### SIXTH AFFIRMATIVE DEFENSE
(Estoppel)

Marland alleges that Plaintiff is equitably estopped from asserting each and all of the purported causes of actions by reason of its own acts, omission and conduct, or that of its agents.

### SEVENTH AFFIRMATIVE DEFENSE
(Unclean Hands)

Marland alleges that Plaintiff's claims fail under the doctrine of unclean hands, because Allen Brothers failed to act in good faith with respect to Marland's employment with Allen Brothers, and because Allen Brothers has not brought this action in good faith. In support of this defense, Marland alleges:

22. Allen Brothers is controlled by its Chairman, Robert Hatoff, and his son, Allen Brothers' President, Todd Hatoff (collectively the "Hatoffs"). Hatoffs behavior towards Marland was often erratic and abusive.

23. On numerous occasions during Marland's tenure with Allen Brothers from 1993 through 2007, Robert Hatoff targeted Marland with unprovoked, unexplained, and uncontrollable rages. During these episodes, Robert Hatoff insulted, berated, and demeaned Marland both in front of the other employees in the Allen Brothers' offices, and inside Robert Hatoff's office with the door open and within earshot of Allen Brothers' other employees.

24. Todd Hatoff's behavior was also erratic, hostile, and abusive towards Marland. On several occasions during Marland's career with Allen Brothers, Marland was the target of Todd Hatoff's violent mood swings in which Hatoff, for no apparent reason launched into profanity and insult laden tirades that demeaned and humiliated Marland in front of other Allen Brothers' employees, suppliers, vendors, consultants, and customers. Once outside the presence of his audience of employees, supplier, vendors, consultants and/or customers, Todd Hatoff was usually quick to apologize and remind Marland of his importance to Allen Brothers' success. Despite acknowledging his inappropriate and unreasonable behavior, Todd Hatoff never explained his behavior or took any steps to correct or prevent future outbursts.

25. Indeed, after one specific episode in 1999 after Marland was the innocent victim of Todd Hatoff's temper, Marland expressed a desire to resign from Allen Brothers. After Todd Hatoff pleaded with Marland to stay, Marland agreed to remain with Allen Brothers.

26. The final straw occurred on Friday, February 23, 2007, when Marland again became the victim of the Hatoffs' abuse. On the morning of February, 23, 2007, while Marland was on the phone, Robert Hatoff demanded that Marland hang up the phone, whereupon, he began screaming at Marland in front of the Allen Brothers' office staff. Hatoff called Mark Felix and Saul Cyvas over to Marland's desk and began berating, yelling, and acting in a physically threatening manner towards Marland because he was upset about a glitch in Allen Brothers' order processing and tracking system. Later that morning, Robert Hatoff again demanded that Marland, Felix and Cyvas come to Hatoff's office at which point Hatoff again began yelling, berating, and acting in a physically threatening manner towards Marland.

27. Hatoff's inappropriate, unprovoked and unexplained conduct continued on February 23, 2007. Starting on February 26, 2007, because Todd Hatoff was on vacation, Marland was expected to attend and oversee an Allen Brothers' catalog photo shoot. On the afternoon of February 23, 2007, however, Marland received a call from a publication requesting some of Allen Brothers' products for a potential photo shoot and article on Allen Brothers. In anticipation of being out of the office on Monday, February 26, 2007, Marland went to Robert Hatoff's office and asked that he oversee the order that Marland had prepared for this publication. Despite the fact that Marland and Todd Hatoff had made similar requests to Robert Hatoff in the past, when scheduling required it, Hatoff flew into another rage, screaming and berating Marland, throwing office supplies around his office, and slamming materials into his desk. Marland quickly left Robert Hatoff's office, and fled to Allen Brothers' other building to finish the work day.

- 66 -

CHI99 4904764-3.072860.0011

28.  Allen Brothers' contention that Marland's resignation was the result of his desire to steal Allen Brothers information and either sell it to the highest bidder, use it as a bargaining tool in seeking new employment, or use it to start his own company is false. Rather, Marland's resignation from Allen Brothers was done in response to the pattern of abusive and outrageous conduct by the Hatoffs, and Allen Brothers' failure to correct or prevent the Hatoffs' inappropriate and unreasonable behavior towards Marland.

29.  Since his resignation, Marland has been informed from emails received from an anonymous source that:

- Todd Hatoff may suffer from mental disease, including "delusional paranoia," that may result from Todd Hatoff's "drug and cocaine uses;"

- Todd Hatoff's "use and dealing of drug;"

- a federal law enforcement investigation into "Allen Brothers and specifically Robert Hatoff and Todd Hatoff and their associates for ties to organized crime" has been underway for nearly two years; and

- Allen Brothers, Robert Hatoff, and Todd Hatoff may be involved in schemes involving "money laundering through high end meat purveyors."

(See Google Email String, referenced in Allen Brothers' Amended Complaint as Exhibits 5 and 6 and currently the subject of Allen Brothers pending Motion to File Exhibits Under Seal).

30.  On information and belief, the Hatoffs' pattern of inappropriate, abusive, and unreasonable behavior towards Marland was not the fault of Marland, but rather resulted from the issues facing the Hatoffs that contributed, in whole or in part, to their erratic, abusive and unreasonable behavior.

CHI99 4904764-2.072860.0011

31. In light of these facts, Marland believes that Allen Brothers has not brought this action against Marland in good faith, but rather as a pretextual show of force aimed at intimidating Marland to remaining silent about the erratic, abusive, and inappropriate behavior of its officers, Robert Hatoff and Todd Hatoff, and to avoid paying Marland his outstanding year-end bonus payments and benefits under the Phantom Stock Plan. Indeed, information received by Marland since the start of this litigation confirms that Allen Brothers "is taking this action in court for the sole purpose of not having to pay this phantom stock agreement," which Marland would otherwise be entitled to. (See Google Email String, referenced in Allen Brothers' Amended Complaint as Exhibits 5 and 6 and currently the subject of Allen Brothers pending Motion to File Exhibits Under Seal).

Marland expressly reserves the right to interpose any and all defenses available to him under Illinois law which may become available to him after discovery is taken from Allen Brothers' employees, customers, and vendors.

WHEREFORE, Defendant, Scott Marland, respectfully requests that this Court dismiss the Amended Complaint with prejudice and enter judgment in Marland's favor and against Allen Brothers, Inc.; that Marland be awarded costs and any and all other relief that this Court deems necessary and just.

## COUNTERCLAIMS

Defendant/Counterplaintiff, Scott Marland ("Marland"), by his attorneys, and for his Counterclaim against Plaintiff/Counterdefendant, Allen Brothers, Inc. ("Allen Brothers"), states as follows:

### Parties

32. Scott Marland is an individual residing in Cook County, Illinois. From 1993 through February 25, 2007, Marland was employed by Allen Brothers.

33. Allen Brothers is an Illinois corporation with its principle place of business in Chicago, Illinois. From 1993 through February 25, 2007, Marland was employed by Allen Brothers. Allen Brothers is controlled by its Chairman, Robert Hatoff, and his son, Allen Brothers' President, Todd Hatoff (collectively the "Hatoffs").

### Jurisdiction and Venue

34. This Court has jurisdiction in this matter because the acts giving rise to this action occurred in Illinois and the alleged contracts between Marland and Allen Brothers were signed in Illinois. Allen Brothers, which conducts business in Illinois, is also subject to personal jurisdiction in Illinois pursuant to 735 ILCS § 5/2-209.

35. Venue is proper in the Court pursuant to 735 ILCS § 5/2-101 because Marland and Allen Brothers allegedly entered into agreements and conduct business in Cook County, Illinois, and because other tortious acts alleged in the complaint were committed by Allen Brothers in Illinois.