## Factual Background

I.  **Marland's History with Allen Brothers**

36.  Marland began working at Allen Brothers in 1993, shortly after his graduation from college. Marland was offered the job, by Robert Hatoff, who was a lifelong friend of Marland's father. Over the years Marland referred to Robert Hatoff as his uncle, and Todd Hatoff as his cousin, despite no actual family ties.

37.  Because of the close family-like relationship between the Hatoffs and Marland, Marland has always been extremely loyal to Allen Brothers, and forgiving of the abusive conduct of the Hatoffs towards himself, his wife, and other Allen Brothers employees.

38.  Marland's loyalty and performance did not go unnoticed by the Hatoffs and Allen Brothers. Indeed, by the time of his resignation, Marland was a Vice President and responsible for the day-to-day operations and marketing of the Retail Division, including catalog and internet sales.

II.  **The Abusive and Outrageous Working Conditions Created and Maintained by the Hatoffs**

39.  Despite the close relationship between Marland and the Hatoffs, and Marland's years of loyal service to Allen Brothers, the Hatoffs' behavior towards Marland was often erratic and abusive, and over the course of Marland's career at Allen Brothers, got progressively worse.

40.  On numerous occasions from 1993 through 2007, Robert Hatoff targeted Marland with unprovoked, unexplained, and uncontrollable rages. During these episodes,

Robert Hatoff insulted, berated, and demeaned Marland both in front of the other employees in the Allen Brothers' offices, and inside Robert Hatoff's office with the door open and within earshot of Allen Brothers' other employees.

41.   Todd Hatoff's behavior was also erratic, hostile, and abusive towards Marland. On several occasions, Marland was the target of Todd Hatoff's violent mood swings when Hatoff, for no apparent reason, launched into profanity and insult laden tirades, demeaning and humiliating Marland in front of other Allen Brothers' employees, Allen Brothers' suppliers and vendors, and even Allen Brothers' customers. Once outside the presence of his audience of employees, supplier, vendors, and/or customers, Todd Hatoff was usually quick to apologize and remind Marland of his importance to Allen Brothers' success. Despite acknowledging his inappropriate and unreasonable behavior, Todd Hatoff never explained the reasons for his behavior or took any steps to correct or prevent future outbursts.

42.   Indeed, after one specific episode in 1999 in which Marland was the innocent victim of Todd Hatoff's temper, Marland expressed a desire to resign from Allen Brothers. After Todd Hatoff pleaded with Marland to stay, Marland agreed to remain with Allen Brothers.

43.   The final straw occurred on Friday, February 23, 2007, when Marland again became the victim of the Hatoffs' abuse. On the morning of February, 23, 2007, while Marland was on the phone, Robert Hatoff demanded that Hatoff hang up the phone, whereupon, he began screaming at Marland in front of the Allen Brothers' office staff. Hatoff called Mark Felix and Saul Cyvas over to Marland's desk and began berating, yelling, and acting in a physically threatening manner towards Marland because he was upset about a

glitch in Allen Brothers' order processing and tracking system. Later that morning, Robert Hatoff again demanded that Marland, Felix and Cyvas come to Hatoff's office at which point Hatoff again began yelling, berating, and acting in a physically threatening manner towards Marland.

44.   Hatoff's inappropriate, unprovoked and unexplained conduct continued on February 23, 2007. Starting on February 26, 2007, because Todd Hatoff was on vacation, Marland was expected to attend and oversee an Allen Brothers' catalog photo shoot. On the afternoon of February 23, 2007, however, Marland received a call from a publication requesting some of Allen Brothers' products for a potential photo shoot and article on Allen Brothers. In anticipation of being out of the office on Monday, February 26, 2007, Marland went to Robert Hatoff's office and asked that he oversee the order that Marland had prepared for this publication. Despite the fact that Marland and Todd Hatoff had made similar requests to Robert Hatoff in the past, when scheduling required it, Hatoff inexplicably flew into another rage, screaming and berating Marland, throwing office supplies around his office, and slamming materials into his desk. Feeling abused, humiliated, demeaned, and physically threatened, Marland quickly left Robert Hatoff's office, and fled to Allen Brothers' other building to finish the work day.

45.   Still undecided regarding his future with Allen Brothers, on Saturday, February 24, 2007, Marland went to the Allen Brothers offices to remove any and all personal items from his desk and personal information from his computer in case he decided not to return to Allen Brothers on Monday, February 26, 2007. Marland also completed some work related tasks while he was in Allen Brothers' office on February 24, 2007.

46. On information and belief, sometime between February 23, 2007, and the afternoon of February 24, 2007, Todd Hatoff became aware of the altercation between Robert Hatoff and Marland that occurred on February 23, 2007. While vacationing in Argentina, Todd Hatoff called Marland on several occasions on both February 24, 2007 and February 25, 2007, leaving messages for Marland to call him back as soon as possible. After several calls, Marland and Todd Hatoff finally spoke on the evening of February 25, 2007. Todd Hatoff feigned ignorance about what occurred between Marland and Robert Hatoff on February 23, 2007, but as soon as Marland explained what happened, and that he was considering leaving Allen Brothers, Todd Hatoff acknowledge that his father's behavior towards Marland was inappropriate and unreasonable, apologized for his father's behavior, and pleaded with Marland to remain with Allen Brothers.

47. After years abuse at the hands of the Hatoffs, Marland decided that he could no longer tolerate the verbal abuse that had become commonplace from both Robert and Todd Hatoff, and therefore had no reasonable choice but to resign his position with Allen Brothers. During their telephone conversation on February 25, 2007, Marland informed Todd Hatoff of his resignation.

48. Since his resignation, Marland has been informed from emails received from an anonymous source that:

- Todd Hatoff may suffer from mental disease, including "delusional paranoia," that may result from Todd Hatoff's "drug and cocaine uses;"

- Todd Hatoff has engaged in a persistent pattern of "use and dealing of drugs;"

- a federal law enforcement investigation into "Allen Brothers and specifically Robert Hatoff and Todd Hatoff and their associates for ties to organized crime" has been underway for nearly two years; and

- 73 -

- Allen Brothers, Robert Hatoff, and Todd Hatoff may be involved in schemes involving "money laundering through high end meat purveyors.

(See Google Email String, referenced in Allen Brothers' Amended Complaint as Exhibits 5 and 6 and currently the subject of Allen Brothers pending Motion to File Exhibits Under Seal).

49. On information and belief, the Hatoffs' pattern of inappropriate, abusive, and unreasonable behavior towards Marland was not the fault of Marland, but rather resulted from the above described issues facing the Hatoffs that contributed, in whole or in part, to their erratic, abusive and unreasonable behavior.

50. In March and April 2007, shortly after the outrageous and abusive conduct of Robert Hatoff towards Marland, that forced Marland's resignation, Marland began experiencing symptoms of severe gastrointestinal illness, including vomiting, nausea, severe diarrhea, and dehydration. In April 2007, Marland was hospitalized and later diagnosed with Crohn's Disease. On information and belief, Marland's Crohn's Disease was caused, in whole or in part, by the stress resulting from the Hatoffs' and Allen Brothers' outrageous and intentional conduct, and Marland's constructive discharge from Allen Brothers.

### COUNT I
### Breach of Contract/Constructive Discharge
### (Against Allen Brothers)

51. Marland incorporates by reference as if fully alleged herein the facts alleged in paragraphs 1 through 19 of Marland's Counterclaim.

52. Exhibit 1 to the Amended Complaint states, "[t]he Company employs the Employee and the Employee accepts employment upon certain terms and conditions agreed

upon orally between the parties and upon the terms and conditions in the Agreement." (Employment Agreement, § 4, attached to Allen Brothers' Amended Complaint as Exhibit 1) (emphasis added).

53. In or about April 2006, shortly after the termination of Debbie Marland from Allen Brothers, Allen Brothers, through its President Todd Hatoff, requested that Marland expressly affirm of his loyalty to Allen Brothers, his desire to continue working for Allen Brothers, and his commitment to Allen Brothers' success. In exchange for Marland's affirmations and assurances, and the resulting peace of mind to Allen Brothers, Todd Hatoff promised Marland that he would have a job at Allen Brothers for as long as he wanted, or until the company was sold, whichever came first.

54. Marland's assurances and Hatoff's guarantee in April 2006 constitutes an oral modification to the Employment Agreement (hereinafter, "Oral Modification"), as contemplated by Section 4 of Exhibit 1 to the Amended Complaint.

55. Under the terms of the Oral Modification to the Employment Agreement, Allen Brothers could not fire, terminate, or otherwise discharge Marland, unless and until Allen Brothers was sold. Since Allen Brothers and Marland entered into the Oral Modification, Allen Brothers has not been sold.

56. As described above, throughout his career at Allen Brothers, and culminating on February 23, 2007, Marland was the victim of hostility, intimidation, aggression, humiliation, and mental and verbal abuse from the Hatoffs. These events made working for Allen Brothers so intolerable that a reasonable person would be compelled to resign.

-75-

57. On numerous occasions, Marland attempted to complain about the conduct of the Robert or Todd Hatoff. Because, however, Marland was a Vice President at Allen Brothers, the only supervisors to whom Marland could complain were Allen Brothers' Chairman, Robert Hatoff and Allen Brothers' President, Todd Hatoff. No action was taken to correct or prevent the pattern of erratic and abusive conduct by the Hatoffs.

58. The working conditions created by Robert Hatoff and Todd Hatoff, and accepted by Allen Brothers, were so intolerable that a reasonable person would be compelled to resign.

59. As a result of this hostile, intimidating, aggressive, abusive, humiliating, unsafe, and offensive work environment, Marland resigned from his position with Allen Brothers on February 25, 2007.

60. Marland's resignation constitutes a constructive discharge, in breach of the Oral Modification, because the working conditions created by the Hatoffs and Allen Brothers were so intolerable that a reasonable person would be compelled to resign.

61. As a result of the actions set forth herein, Marland has suffered and will continue to suffer both pecuniary losses, including but not limited to the loss of his position and its wages and benefits, future wages and benefits, and non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

WHEREFORE, Defendant/Counterplaintiff, Scott Marland, respectfully requests that this Court dismiss the Amended Complaint with prejudice and enter judgment in his favor and

against Plaintiff/Counterdefendant Allen Brothers, Inc. in an amount to be determined at trial, plus costs and such other relief as the Court deems necessary and just.

## COUNT II
### Intentional Infliction of Emotional Distress
### (Against Allen Brothers)

62. Marland incorporates by reference as if fully alleged herein the facts alleged in paragraphs 1 through 30 of Marland's Counterclaim.

63. Allen Brothers' conduct toward Marland as set forth above was extreme and outrageous, intended to cause, or was in reckless disregard of the probability of causing emotional distress; the conduct resulted in severe and extreme emotional distress suffered by Marland, and Allen Brothers outrageous conduct, or the condonation of outrageous conduct proximately caused Marland's emotional distress.

64. Allen Brothers, by its Chairman, Robert Hatoff, and President, Todd Hatoff, directly engaged in, participated in, ordered, ratified, expressly authorized, tolerated, or ignored this extreme and outrageous conduct.

65. Allen Brothers, through the Hatoffs, knew and intended that its conduct would inflict severe physical or emotional distress, or knew that its conduct would inflict severe physical or emotional distress, or knew that its conduct was certain or substantially certain to cause Marland to suffer severe physical and emotional distress.

66. As a direct and proximate result of Allen Brothers' outrageous and abusive conduct, Marland suffered emotional distress, anguish, nervous tension, headaches, anxiety,

sleeplessness, and stress-induced illness continuing to the present requiring medical intervention, so severe that no reasonable person could be expected to endure it.

WHEREFORE Defendant/Counterplaintiff, Scott Marland, respectfully requests that this Court dismiss the Amended Complaint with prejudice and enter judgment in his favor and against Plaintiff/Counterdefendant Allen Brothers, Inc. in an amount to be determined at trial, plus costs and such other relief as the Court deems necessary and just.

## COUNT III
### Declaratory Judgment
### (Against Allen Brothers)

67.  If the Phantom Stock Plan, attached as Exhibit 2 to the Amended Complaint is enforceable, then Marland incorporates by reference as if fully alleged herein the facts alleged in paragraphs 1 through 35 of Marland's Counterclaim.

68.  Paragraph 5.3 of the Phantom Stock Plan entered into between Marland and Allen Brothers states:

> In the event that Employee's employment is termination on account of his voluntary termination of employment prior to his attainment of age 60 or if his employment is terminated by Employer without Cause before his attainment of age 60, **payment of benefits shall commence not later than the five year anniversary of the date of his termination of employment.** In the case of Employee's voluntary termination of employment prior to age 60, the amount of his benefit will be subject to vesting in accordance with Section 5.4. In the case of Employee's termination on account of death, Disability, Normal Retirement, termination by Employer without Cause prior to his attainment of age 60, or voluntary termination by Employee prior to his attainment of age sixty (60), **Employee's Account will be distributed over five (5) years in twenty (20) equal quarterly installations.**"

(Phantom Stock Plan § 5.3, attached to Allen Brothers' Amended Complaint as Exhibit 2) (emphasis added).

69. Marland's resignation from Allen Brothers occurred prior to his attainment of age 60.

70. Paragraph 5.7 of the Phantom Stock Plan, "COMPETITION WITH EMPLOYER RESULTS IN FORFEITURE," states:

> Employee shall not, while he is employed by Employer, or if his employment with Employer has terminated, for as long as any portion of his Account remains undistributed, engage in any business or practice, either as a shareholder or owner or partner, director, officer, employee, consultant, or otherwise, in competition with the Employer, or otherwise take any actions prejudicial to the Interests of Employer. If the Administrator determines that Employee has violated this provision or in the event that the Employee breaches the Employment Agreement, the Board may declare that the Employee's rights are terminated hereunder and his Account, or the remaining undistributed portion thereof, shall be declared a Forfeiture.

(Phantom Stock Plan § 5.7, attached to Allen Brothers' Amended Complaint as Exhibit 2) (emphasis added).

71. Under the terms of Sections 5.3 and 5.7 of the Phantom Stock Plan, Marland is restrained from, as determined by Allen Brothers, competing or otherwise taking "actions prejudicial to the Interests" of Allen Brothers for ten years from the date of Marland's resignation from Allen Brothers.

72. The restrictions placed on Marland by Sections 5.3 and 5.7 of the Phantom Stock Plan are unreasonable restraints on trade and against public policy in Illinois. These provisions are therefore invalid and unenforceable.

73. The invalidity and unenforceability of Sections 5.3 and 5.7 of the Phantom Stock Plan results in no temporal restrictions on Marland's right to benefits under the

Phantom Stock Plan. As such, Marland's Account under the Phantom Stock Plan became due and payable upon his resignation on February 25, 2007.

74.  There is an actual and justiciable controversy regarding the validity and enforceability of Sections 5.3 and 5.7 of the Phantom Stock Plan, and whether Marland's Account under the Phantom Stock Plan became due and payable upon his resignation from Allen Brothers.

75.  A declaration regarding the validity and enforceability of Sections 5.3 and 5.7 of the Phantom Stock Plan, and whether Marland's Account under the Phantom Stock Plan became due and payable upon his resignation from Allen Brothers will terminate this controversy.

WHEREFORE Defendant/Counterplaintiff, Scott Marland, respectfully requests that this Court dismiss the Amended Complaint with prejudice and enter judgment in his favor and against Plaintiff/Counterdefendant Allen Brothers, Inc.; declare that Sections 5.3 and 5.7 of the Phantom Stock Plan are invalid and unenforceable, and that Marland's Account under the Phantom Stock Plan became due and payable upon his resignation from Allen Brothers; and award him any and all other relief that this Court deems necessary and just.

## COUNT IV
### Breach of Contract
### (Against Allen Brothers)

76.  Marland incorporates by reference as if fully alleged herein the facts alleged in paragraphs 1 through 44 of Marland's Counterclaim.

77.  The Employment Agreement between Marland and Allen Brothers states:

> NOW, THEREFORE, in consideration of the premises contained in this Agreement, as well as Employee's continued employment by the Company pursuant to the terms and conditions contained herein, the Phantom Stock Plan simultaneously executed by the parties hereto, his promotion to the office of Vice President, **the supplement to his year-end bonus of $10,000, the increase in his annual compensation by $10,400** and other goods and valuable consideration, the receipt and sufficiency of which are hereby acknowledged...

(Employment Agreement, p. 2, attached to Allen Brothers' Amended Complaint as Exhibit 1) (emphasis added).

78. Prior to the effective date of the Employment Agreement, Marland's year-end bonus for 2004 was $30,000. Under the terms of the Employment Agreement, Allen Brothers was obligated to increase Marland's year-end bonus by $10,000 annually. Allen Brothers was therefore obligated to pay Marland $40,000 as 2005 year end bonus, and $50,000 as a 2006 year-end bonus.

79. Under the terms of Exhibit 1, Allen Brothers was obligated to increase Scott Marland's annual compensation by $10,400 annually.

80. Up to an including the date of Marland's resignation, Marland performed all of his obligations under the terms of Exhibit 1.

81. Allen Brothers paid Marland $35,000 for his 2005 year-end bonus.

82. Allen Brothers paid Marland $20,000 for his 2006 year-end bonus.

83. Allen Brothers has failed to pay Marland the remaining $5,000 balance of his 2005 year-end bonus, and the remaining $30,000 of his 2006 year-end bonus.

84. Allen Brothers did not increase Marland's 2005 annual compensation by $10,400 in 2006.

85. Allen Brothers did not increase Marland's 2006 annual compensation by $10,400 in 2007.

86. Allen Brothers has materially breached the Employment Agreement by refusing to pay the outstanding balances of Scott Marland's 2005 and 2006 year-end bonuses, and 2006 and 2007 annual compensation.

87. As a result of Allen Brothers' breach, Marland has suffered direct damages in the amount of $47,000.

WHEREFORE Defendant/Counterplaintiff, Scott Marland, pray that the Court dismiss the Second Amended Complaint with prejudice and enter judgment in favor of Counterplaintiff and against Plaintiff/Counterdefendant Allen Brothers, Inc in an amount to be determined at trial, plus costs and such other relief as the Court deems necessary and just.

Dated: December 11, 2007

Respectfully submitted,

By: _____
One of Its Attorneys

Steven H. Hoeft
Peter M. Schutzel
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606-5096
312.372.2000

CHI99 4904764-2.072860.0011

- 82 -